SHAY *v.* STATE

No. 40214 November 5, 1956 90 So. 2d 209

*John B. Gee, Oscar P. LaBarre,* Vicksburg, for apellant.

*John H. Price, Jr.,* Asst. Atty. Gen., Jackson, for apellee.

LEE, J.

At the December 1955 Term of the Circuit Court of Warren County Edgar L. Shay was indicted for the crime of forcible rape. The defendant's motion for a change of venue was sustained, and the venue was changed to the Circuit Court of Jefferson County. The trial was held, pursuant thereto, and from the verdict of guilty, which fixed the punishment at life imprisonment in the state penitentiary, and the judgment thereon, Shay appealed.

The evidence for the State showed that, on Saturday night, August 27, 1955, Miss Betty Jane Morace, a nineteen year old student nurse in a hospital at Vicksburg, was forcibly raped between 9 and 10 o'clock in a roadside park in Warren County, about 7 miles north of Vicksburg. The victim and Michael Allen Rankin, her fiance, had

driven to the place in a car. They parked, and were sitting on the rear seat, because, as they explained, the weather was hot and they wished to open the doors for ventilation—if they had been sitting on the front seat with the doors open the inside light would have been burning. In about 10 minutes a man pushed a flashlight through an opening, pointed a pistol at them, and threatened to blow their brains out, if they moved. He forced them to get out of the car and give him their wallets. He then ordered them back into the car and forced Rankin to drive it through an opening in the fence for about 75 yards into the woods. At this place, he forced Rankin into the trunk of the car and locked him therein. The assailant then tore the victim's brassiere off, forced her at gun point to remove her clothes and had sexual intercourse with , and carnal knowledge of, her. Rankin in the trunk could hear, but could not see, what occurred. After the assault, the rapist took several dollars out of the victim's billfold and a brown cigarette lighter with her initials on it. His next act was to unlock the trunk, let Rankin out, and tie him to a tree. Thereupon he tried to drive the car away, but crashed into several trees. Miss Morace then drove back to the place where Rankin was tied. At length he untied Rankin, required him and the young lady to get in the front seat of the car, and he, with a pistol in hand, forced Rankin to drive the car in a circuitous route to Vicksburg, where he disembarked.

As soon as they were out of the presence of the assailant Rankin drove to his mother's home and called the police. Sheriff Owen Ring came and found Miss Morace very upset, nervous and crying. She gave him a description of her assailant, and he took her to a hospital, where she was examined and treated by Dr. Knox.

On Tuesday following the commission of the crime on Saturday night, Vernon Wells, a highway patrolman, was on his regular assignment on U. S. Highway 61 be-

tween Rolling Fork and Anguilla. The description of Miss Morace's assailant had been broadcast, and the authorities had advised the patrolman by radio that a warrant had been issued. About 5 o'clock that afternoon, a hitchhiker, thumbing a ride, flagged him down. On stopping the patrolman observed that the hitchhiker fit the description of the subject for whom the authorities in Vicksburg were looking as the suspect of this crime. On inquiry as to identity, the man gave his name as Edward Keeton, but he had no identification papers. He stated that he had some tattoo marks and when he pulled up his left sleeve the patrolman saw the marks and the initials "LMC" on the arm, and immediately arrested the man and took him to the courthouse in Rolling Fork. The man had a handbag; and as they were talking at the time about the name Keeton, the patrolman stepped toward the bag as if to open it and get the laundry mark from his clothes. Thereupon the prisoner said, "You needn't open it, I am the man you are looking for, my name is Shay." The patrolman forthwith delivered the accused and his bag to Sheriff Ring of Warren County.

When the sheriff and his deputy received the prisoner he had a ballpoint pen and a flashlight on his person, and the handbag with a number of articles in it and a .32 caliber revolver. Miss Morace's cigarette lighter, which was taken at the time of the rape, and which was fully identified by her, was found in the bag and was introduced in evidence.

The victim testified that, as they were driving from the roadside park toward Vicksburg, after her assault, she and Rankin were on the front seat and her assailant was on the rear seat behind Rankin, and she saw him face to face, and that Shay was her assailant. It was developed that, about two hours after the sheriff took Shay into custody, he placed the accused in a lineup with four other persons. When Miss Morace viewed

them, she immediately identified the defendant as the perpetrator of the crime.

The appellant contends that his arrest by Patrolman Wells was unlawful because it was made without a warrant and without proper cause to believe that he was the guilty party, and being unlawful, the evidence obtained thereby was improperly admitted.

 Under Section 2470, Code of 1942, an arrest may be made without a warrant when a felony has been committed and the arresting officer has reasonable ground to suspect and believe that the person proposed to be arrested was the criminal actor therein. The patrolman did not stop the hitchhiker—the hitchhiker stopped him. The officer had ample information that a felony had been committed. When the description of the hitchhiker fit the description of the rapist there was abundant evidence that this hitchhiker was the man who had committed the rape. Wheeler v. State, 219 Miss. 129, 63 So. 2d 517, is directly in point on this question. See also Craft v. State, 202 Miss. 43, 30 So. 2d 414. The arrest being lawful, the search incident thereto was also lawful. Hence there is no merit in this contention.

The appellant also contends that it was error to admit evidence that he took money and other articles, including the cigarette lighter, from his victim.

 The taking of these articles occurred on the same occasion when the more serious offense was committed. These incidents were so connected as to constitute a continuous transaction. Besides the cigarette lighter was of distinct value in establishing the identity of the assailant. The rapist had a flashlight and a revolver at the time; and a flashlight and a revolver were taken from the accused. It was not error to admit this evidence. King v. State, 66 Miss. 502, 6 So. 188; Raines v. State, 81 Miss. 489, 33 So. 19; Floyd v. State, 166 Miss. 15, 148 So. 226; Clark v. State, 181 Miss. 455, 180 So. 602; Bangreen v. State, 198 Miss. 359, 22 So. 2d 360; May v.

State, 205 Miss. 295, 38 So. 2d 726; Steele v. State, 213 Miss. 739, 57 So. 2d 574.

On cross examination, Miss Morace was asked, in effect, if she and Rankin did not have an affair that night, and that this was the reason for their going back to Vicksburg and reporting that she had been raped. The State's objection to this question was sustained. The appellant contends that this was error.

██ ██ Of course proof of unchastity on the part of a prosecutrix is admissible, where it bears on a material issue. Generally such evidence is admitted on the issue of consent. ██ ██ But "where want of consent is not in issue, as where accused denies the act charged, * * * evidence of the female's want of chastity is immaterial and inadmissible." 75 C. J. S., Rape, Section 63, pages 534-5. See also Wilkerson v. State, 106 Miss. 633, 64 So. 420.

In Barnes v. State, 164 Miss. 126, 143 So. 475, the prosecutrix was asked, on cross examination, "whether nor not one Hal Conn walked up on her while she was in a compromising situation sometime in September 1931." The court sustained an objection by the State, and did not permit the witness to answer. This action was assigned as error. The Court said: "In the present case there was no attempt by the appellant to show the bad reputation of Gladys King for unchastity. At most, there was an effort on the part of the appellant to show an isolated act of sexual intercourse on her part, and furthermore the crime charged in the present case was an attempt to rape, while in the Wilkerson case the crime charged was rape. There was no pretense of claim on the part of appellant that Gladys King consented to the assault committed upon her. His sole defense was an alibi —if the assault was committed, it was by some one else and not by appellant. We think the evidence sought to be brought out by appellant was wholly irrelevant to the issue." In the present case, appellant did not pretend that the prosecutrix consented to the act. He did not

testify, nor did he offer any evidence whatever. Barnes v. State, supra, is a complete answer to the appellant's contention.

However, on the cross examination of Rankin, he was asked if it was not he rather than anyone else who had intercourse with Miss Morace. There was no objection by the State, and his answer was ''No, sir, it was not, and I will tell you this, Miss Morace is one of the finest, cleanest girls I have ever been out with and I have never touched her.'' Thus, after all, the appellant got the benefit of an answer to his inquiry on that subject matter.

No reversible error appears in the record, and the cause is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie,* JJ., concur.