246 So.2d 516 (1971)
David Frank BAYLOR
v.
STATE of Mississippi.
No. 46163.
Supreme Court of Mississippi.
April 5, 1971.
*517 Thomas M. Hendricks, Jr., Thomas R. Jones, Meridian, for appellant.
A.F. Summer, Atty. Gen., by Velia Ann Mayer, Special Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
David Frank Baylor was indicted at the November 1969 term of the Circuit Court of Lauderdale County for the rape of a twelve-year-old girl. Baylor was arraigned, pled not guilty and, upon his motion, the case was continued until the May 1970 term. He was then tried and convicted and, upon recommendation of the jury, sentenced to serve a life term in the penitentiary. This appeal is from that conviction and sentence.
In the City of Meridian, at about midnight on July 3-4, 1969, a twelve-year-old girl was savagely raped in an upstairs bedroom of her home. The victim awakened as she was being choked and dragged onto the floor by her attacker, who continued to choke her until she lapsed into unconsciousness. By the light of a table lamp that her mother had placed upon a chair by the bed and had left burning, before becoming unconscious and during a subsequent interval of consciousness, the girl was able to get a good look at her assailant. After the attack and when consciousness had returned, her mother, responding to her screams, found her bleeding profusely and in a state of hysteria. At the hospital, where she was taken by her father, the doctor found that she had been injured severely. After a time, however, the girl was able to give the officers, who had responded to a call from the mother, a detailed description of the attacker and his clothing. The clothing included a yellow sport shirt and gold pants.
In the bedroom, a pool of blood was found upon the rug where the attack had taken place. The assailant had made good his escape before his victim finally regained consciousness. At the hospital the examining doctor found that the girl had sustained serious physical injuries, both as a result of the brutal choking and the rape itself.
The investigating officers sent out a radio call to all patrol cars, giving the detailed description of the attacker and his clothing supplied by the girl. This message was received by the officers in a patrol car which was later dispatched to investigate another matter at the Terminal Cafe, an establishment located some dozen or so blocks from the scene of the attack. Arriving at the Terminal Cafe, the officers observed a man dressed in a yellow sport shirt and gold pants and possessing the physical characteristics described by the girl. As the officers alighted from their patrol car, this man reentered the restaurant and retreated toward the rear. The officers followed. As they approached the man they observed a skinned place on his elbow and a spot of what appeared to be blood on the outside of the crotch of his trousers. After observing these things and a brief conversation with this individual, the officers took him into custody for "vagrancy and loitering" and as a suspect in the rape case. This was some two to three hours after the rape occurred. The man was David Frank Baylor, the appellant in this case.
At the jail, appellant's distinctive yellow sport shirt and gold pants were taken from him and he was given "prison" clothes. Appellant's shirt and pants were forwarded to the Federal Bureau of Investigation for laboratory examination. Also sent, but in separate containers, were a piece of the rug from the floor on which the rape had taken place, the girl's housecoat she had been wearing when she had gone to bed, the bed sheets and her pajamas.
Tests conducted by the Federal Bureau of Investigation revealed that the shirt was made of yellow polyester fibres and that microscopically identical yellow polyester fibres were found upon the pajama bottoms, the sheets and the bedspread. The gold pants were found to be made of rayon fibres and identical fibres were found upon *518 the sheets, bedspread and a portion of the rug. The rug was brown rayon and microscopically identical brown rayon fibres were found on appellant's shirt. In each case the fibres matched in color, composition, construction, and diameter.
A number of grounds are assigned by appellant for reversal.
The arrest of appellant without a warrant is challenged.
Mississippi Code 1942 Annotated section 2470 (Supp. 1968) provides for an arrest without a warrant where the arresting officers have reasonable or probable cause to believe that (1) a felony has been committed and (2) the person who is arrested has committed it. This section has been construed and upheld by this Court in several cases. McCollum v. State, 197 So.2d 252 (Miss. 1967); Bradshaw v. State, 192 So.2d 387 (Miss. 1966); Shay v. State, 229 Miss. 186, 90 So.2d 209 (1956); Bird v. State, 154 Miss. 493, 122 So. 539 (1929); Kennedy v. State, 139 Miss. 579, 104 So. 449 (1925); Dunning v. State, 251 Miss. 766, 171 So.2d 315 (1965), cert. denied 386 U.S. 993, 87 S.Ct. 1310, 18 L.Ed.2d 339.
Nor is the arrest under such circumstances invalid because of a failure of the arresting officer to advise the person arrested of its cause at the time of the arrest. Such an omission, however, does shift the burden of proving probable cause to the prosecution. Barnett v. United States, 384 F.2d 848 (5th Cir.1967); Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962); Clay v. State, 184 So.2d 403 (Miss. 1966).
That the rape occurred is a fact established and not disputed. Under all of the circumstances, it is clear that the officers who took appellant into custody (1) knew that the felony had been committed and (2) had reasonable grounds to believe that appellant had committed it. They were in possession of a description of the attacker's physical characteristics and of the clothing he had worn, which fitted the appellant and the clothing that he had on. There was what appeared to be blood on appellant's trousers and his elbow, exposed by his short sleeve sport shirt, had been "skinned."
The United States Court of Appeals for the Fifth Circuit in Lathers v. United States, 396 F.2d 524 (5th Cir.1968) said that while probable cause is not a mere "hunch," neither is it a "certainty or a conclusion beyond a reasonable doubt." The Court said:
Our constitution does not require a trial before an arrest. And while it does not sanction random police custodialism, it permits common sense, honest judgments by police officers in their probable-cause deliberations. * * * 396 F.2d at 532.
The question of the existence of probable cause for the arrest was fully explored in the trial court, both upon the pretrial motion to suppress as well as during the trial itself. In the final analysis this was a judicial question and the trial court's finding that probable cause for the arrest did exist is fully supported by the evidence. Canning v. State, 226 So.2d 747 (Miss. 1969); King v. State, 147 Miss. 31, 113 So. 173 (1927). The officers were in possession of a detailed description of the suspect and of his clothing supplied by the victim of the crime who was shown to have had an opportunity to observe the suspect in the course of the commission of the crime. Such information is a common and sufficiently reliable basis upon which to establish probable cause. Bradshaw v. State, supra, and Shay v. State, supra, and Wheeler v. State, 219 Miss. 129, 63 So.2d 517, cert. denied 346 U.S. 852, 74 S.Ct. 67, 98 L.Ed. 367 (1953).
It is contended that the seizure and examination of appellant's clothing violated his rights under the Fifth Amendment against self-incrimination or his Sixth Amendment right to counsel. In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) the United States Supreme Court held that the withdrawal of *519 the accused's blood and the admission of the analysis report did not violate self-incrimination rights under the Fifth Amendment. The Fifth Amendment privilege against self-incrimination protects an accused from being compelled to testify against himself, that is, to provide evidence of a testimonial or communicative nature, but does not extend to the securing of real or physical evidence. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schmerber v. California, supra.
The United States Supreme Court, in Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), held that the clothing involved in that case was not "testimonial" or "communicative" evidence and that the accused's Fifth Amendment right against self-incrimination was not violated by its introduction upon the trial of the accused.
Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is directed toward the protection of an accused's rights under the Fifth Amendment. It does not deal with the question of searches and seizures. State v. Lyons, 76 Wash.2d 343, 458 P.2d 30 (1969); State v. Forney, 182 Neb. 802, 157 N.W.2d 405 (1968).
The Sixth Amendment right to counsel is not violated by a failure to provide counsel at noncritical stages of an investigation such as are involved in scientific analysis of an accused's fingerprints, blood sample, clothing, hair, etc. This view is supported by United States v. Wade, supra.
It is established in Mississippi that an arresting officer may search a prisoner's person and the surrounding area pursuant to a lawful arrest. May v. State, 199 So.2d 635 (Miss. 1967) and Shay v. State, 229 Miss. 186, 90 So.2d 209 (1956). One of the fundamental purposes of such a search is to preserve vital evidence.
We find no merit in the contention that appellant's rights were violated by the removal and examination of his clothing under the circumstances of this case.
Appellant next contends that he was subjected to an unlawful lineup identification. The evidence shows that a waiver of rights, including the right to counsel, was executed by appellant at eleven o'clock, a.m. on July 4, 1969, the morning after the arrest occurred. It is contended in the brief that appellant did not know the meaning of the waiver. This contention is not supported by any testimony in the record, either at the pretrial hearing or upon the actual trial itself. The appellant did not testify at any time. Several days after the attack, the victim pointed out appellant in a lineup at the jail as being her assailant, but this was not used by the prosecution at appellant's trial upon the charge.
In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) the United States Supreme Court had under consideration the question of whether a courtroom identification should be stricken because counsel had not been present at a lineup. In Wade the Court said:
We think it follows that the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, "`[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt 221 (1959)." See also Hoffa v. United States, 385 U.S. 293, 309, 87 S.Ct. 408, 17 L.Ed.2d 374. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of *520 another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.
388 U.S. 241, 87 S.Ct. 1939-1940, 18 L.Ed.2d at 1149.
The courtroom identification of appellant met the tests prescribed in Wade There was ample prior opportunity to observe the attacker, there was no substantial discrepancy in any pretrial lineup description and appellant's actual description, there was no prior identification of any other person, there was no failure to identify appellant upon any prior occasion, and the lapse of time between the commission of the crime and the lineup identification had been only two or three days. Under the tests set forth in Wade, the courtroom identification was properly admitted.
This Court in Poole v. State, 216 So.2d 425, (Miss. 1968) followed the rule in Wade. In Poole, this Court said that, where the prosecution puts on no evidence whatever concerning the lineup or "jail-house" identification, a courtroom identification will not be excluded where the witness is shown to have had an independent source as the basis of the courtroom identification. This rule is not altered merely because the attorney for the accused brings out on cross-examination the fact of the pretrial identification.
In this case, the victim of the rape had an opportunity to observe her assailant in the light of a lamp burning by her bedside both before she became unconscious and during an interval when she had returned to consciousness in the course of the attack. In any event, the lineup identification would only have gone to the weight to be given to the testimony identifying appellant. Harris v. State, 206 So.2d 829 (Miss. 1968).
Finally, there is no merit in the contention that the verdict was against the overwhelming weight of the credible evidence. The facts in evidence offered by the prosecution have already been stated in outline. Appellant did not testify. His defense was an alibi. A number of witnesses sought to establish that he was elsewhere at the time of the attack. These witnesses were not entirely in agreement. At most, their testimony conflicted with the eyewitness identification of appellant as the attacker and created a factual issue which the jury resolved against appellant.
The eyewitness identification of appellant receives support from the results of laboratory tests performed in the laboratories of the Federal Bureau of Investigation. The jury was the sole judge of the credibility of the witnesses and of the weight of the evidence. Its verdict is fully sustained by the testimony in the record and is not against the overwhelming weight of the credible evidence.
Other assignments of error have been examined and considered and are found to be without merit. The judgment appealed from is affirmed.
Affirmed.
All Justices concur.