Defendant was convicted in the Circuit Court of the First Judicial District of Hinds County for raping a female child under the age of twelve years and was sentenced to death.
The defendant and his wife resided in Moss Point and in March, 1975 the defendant's wife requested that she and the defendant be permitted to live with Mr. and Mrs. M.L. Ruffin in Jackson for a short time until they could find employment. Mrs. Ruffin consented to her sister's request and the defendant arrived at the Ruffin's home on March 19, 1975. The defendant's wife remained in Moss Point but planned to move to Jackson after defendant secured employment. On March 20, 1975 Mrs. Ruffin retired to her bedroom along with her youngest son and her eight year old daughter, Sophia, about 8:30 p.m. Mr. Ruffin arrived home from a union meeting about midnight and placed the two children in their bedroom before retiring. Mrs. Ruffin awakened about 5:30 a.m. the next morning and proceeded to the room occupied *Page 1360 
by defendant and her oldest son, to awaken the oldest son for school. Upon observing that the defendant was not in his bed, she proceeded to the bedroom occupied by the two youngest children and discovered the defendant in bed with the children. Her questions to the defendant about the reason he was in the children's bed were ignored and she awakened the children and pulled them out of bed. She took her daughter to the bathroom and discovered that the child had been sexually abused, awakened her husband, informed him that the child had been raped and obtained a pistol from the closet. Mr. Ruffin told his wife to replace the pistol and call the police. He proceeded to the children's bedroom and dragged the defendant out of bed when the defendant stated: "I know you are going to kill me for this." About 6:00 a.m. the police responded to the Ruffin's call, arrested the defendant, advised him of his rights, and transported him to the police station. Upon arriving at the jail, defendant's clothing was taken as evidence and he was dressed in a city jail uniform.
We will first address defendant's argument that the death penalty for the rape of a female child under the age of twelve years constitutes cruel and unusual punishment in violation of the United States Constitution. After oral argument, we deferred consideration of the case until the United States Supreme Court decided Coker v. Georgia, ___ U.S. ___, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). After the decision in Coker additional briefs were requested on the applicability of Coker to this case. In Coker the Court took great pains to limit its decision to the applicability of the death penalty for the rape of an adult woman. The Court stated: "That question, with respect to rape of an adult woman, is now before us." At least six other times the majority opinion referred to the rape of an "adult woman." As we view Coker the Court carefully refrained from deciding whether the death penalty for the rape of a female child under the age of twelve years is grossly disproportionate to the crime.
In considering this question we must accept the United States Supreme Court's concept that the Eighth Amendment bars the death penalty for minor crimes. Certainly rape of a female child under the age of twelve years is not a minor crime and we are of the opinion that the Eighth Amendment does not prohibit death as a punishment for the crime. In reaching this conclusion we follow the principle that it is the function of the legislative department, and not the judicial department, to define crimes and prescribe the punishment therefor. The question of whether the death penalty is an appropriate punishment for the rape of a female child under twelve years of age should rest in the legislatures of the fifty states of the Union. Chief Justice Burger, in his dissent in Coker, stated:
 Our task is not to give effect to our individual views on capital punishment; rather, we must determine what the Constitution permits a State to do under its reserved powers. (___ U.S. at ___, 97 S.Ct. at 2872, 53 L.Ed.2d at 997).
Chief Justice Burger further stated in his dissent:
 The question of whether the death penalty is an appropriate punishment for rape is surely an open one. It is arguable that many prospective rapists would be deterred by the possibility that they could suffer death for their offense; it is also arguable that the death penalty would have only minimal deterrent effect. It may well be that rape victims would become more willing to report the crime and aid in the apprehension of the criminals if they knew that community disapproval of rapists was sufficiently strong to inflict the extreme penalty; or perhaps they would be reluctant to cooperate in the prosecution of rapists if they knew that a conviction might result in the imposition of the death penalty. Quite possibly, the occasional, well-publicized execution of egregious rapists may cause citizens to feel greater security in their daily lives; or, on the contrary, it may be that members of a civilized community will suffer the pangs of a heavy conscience *Page 1361 
because such punishment will be perceived as excessive. We cannot know which among this range of possibilities is correct, but today's holding forecloses the very exploration we have said federalism was intended to foster. It is difficult to believe that Georgia would long remain alone in punishing rape by death if the next decade demonstrated a drastic reduction in its incidence of rape, an increased cooperation by rape victims in the apprehension and prosecution of rapists, and a greater confidence in the rule of law on the part of the populace. (___ U.S. at ___, 97 S.Ct. at 2878-79, 53 L.Ed.2d at 1004-1005).
In addition to the observations of the Chief Justice, we suggest that it is arguable whether the life of a victim might be saved if the rapist knew he would not be put to death unless he killed his victim; however, we do not feel that we have the right to substitute our judgment for the judgment of the legislature on the question of punishment for a major crime such as the one involved in this case. We therefore hold that the death penalty is a permissible punishment for the rape of a female child under the age of twelve years.
In Jackson v. State, 337 So.2d 1242 (Miss. 1976), following the death penalty cases decided by the United States Supreme Court,[1] we reversed a sentence of death and remanded the case for a new trial. In Jackson we exercised the inherent power of the Court and prescribed rules of procedure for cases involving the death penalty. We adopted detailed rules providing for a bifurcated trial, permitting jury instructions as to lesser included offenses in proper cases, provided for automatic appellate court review and prescribed appropriate aggravating and mitigating circumstances to be considered by the jury, all in accord with the death penalty cases listed in footnote one. Following our decision in Jackson the state legislature enacted Miss.Gen.Laws Ch. 458 (1977), which made extensive changes in the procedure for the trial and review in death penalty cases. Because the defendant was not afforded a bifurcated trial in accord with Jackson and Miss.Gen.Laws Ch. 458 (1977), this case is reversed for retrial in accordance with the procedure outlined therein. Dobbert v. Florida, ___ U.S. ___, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
Having reached this conclusion, other assignments of error must be considered because this case is remanded for retrial.
Defendant contends that the indictment is fatally defective because it does not charge an essential element of the crime in that it does not charge that the defendant "willfully" raped the female child. The indictment charges the following:
 That Terrance W. Upshaw, a person over 18 years of age, in said District, County and State on the 21st day of March, A.D., 1975, did unlawfully, unlawfully, feloniously and forcibly have carnal knowledge of Sophia Catchine Ruffin, a female child under the age of twelve (12) years, in violation of Section 97-3-65(1) of the Mississippi Code of 1972, Annotated . .
Section 97-3-65(1)[2] Mississippi Code Annotated (Supp. 1974) defines the crime of rape of a female child under the age of twelve years in the following language:
 Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a female child under the age of twelve (12) years, upon conviction, shall be sentenced to death; . . .
The crime with which defendant was charged consists of unlawfully having carnal knowledge of a female child under the age of twelve years. The indictment contains the charge of the necessary elements of the crime as defined by statute. If the *Page 1362 
word "willfully" had been inserted in the indictment it would have been surplusage.
The defendant also argues that the state failed to prove that he willfully committed the offense. This argument is without merit because willfullness is not an essential element of the crime of rape of a female child under the age of twelve years.
Defendant also contends that his motion for directed verdict should have been sustained because of a variance in the name of the victim stated in the indictment and the actual name of the victim shown by the proof. The indictment charges that defendant had carnal knowledge of Sophia Catchine Ruffin, but Sophia's mother testified that the child's name was actually SophiaCatecine Ruffin.
The rule in this state concerning a variance in a victim's name in an indictment and the victim's actual name is found in Hughesv. State, 207 Miss. 594, 42 So.2d 805 (1949) as follows:
 It is next contended that appellant was entitled to a peremptory instruction because the indictment alleged that the offense was committed against Floyd Griffin while the proof showed that the victim's name is Floyd Griffie. The rule is that `an indictment must state the name of the victim of an offense where that is an element of the offense, and a failure to state it, or a material variance between statement and proof is fatal, but an immaterial variance is not.' 27 Am. Jur., Indictments and Informations, Sec. 183, p. 728. In our opinion the variance in this case was so slight that it is immaterial and the appellant could not have been misled thereby. People v. Gormach, 302 Ill. 332, 134 N.E. 756, 29 A.L.R. 1120; Foreman v. State, 186 Miss. 529, 191 So. 657; McDaniels v. State, 203 Miss. 239, 33 So.2d 785; Bowers v. State, 145 Miss. 832, 111 So. 301. (207 Miss. at 603, 42 So.2d at 807).
In addition to the rule expressed in Hughes, another rule is that not every variance between an indictment and the proof requires an amendment to the indictment or a reversal because of the variance. In Roney v. State, 153 Miss. 290, 297,120 So. 445 (1929), the rule was stated as follows:
 It is not every variance between the allegation in the indictment and the proof that will necessitate an amendment of the indictment or a reversal on account of the variance, but it is only when the variance is material and affects the substantive rights of the defendant. (153 Miss. at 297, 120 So. at 446).
In the instant case the evidence and indictment clearly establishes that defendant was fully aware of the identity of his victim and the crime with which he was charged. A conviction or acquittal on the indictment would preclude another prosecution for the same act and protect the defendant against double jeopardy.
The final assignment of error is stated in defendant's assignments of error in the form of a question, as follows:
 Did the trial Court err in overruling the Appellant's objections to the introduction into evidence of the Appellant's clothing and statements made by the Appellant to the police concerning his age in violation of the Appellant's 5th and 6th U.S. Constitution rights?
Under this assignment of error defendant argues that: (1) his arrest was illegal because the officer arrested him without a warrant and did not inform him of the object and cause of the arrest as required by section 99-3-7 Mississippi Code Annotated (1972); (2) his clothing could not be seized and used as evidence because his arrest was illegal; (3) his constitutional rights under the Fourth, Fifth and Sixth Amendments of the United States Constitution were violated; (4) the biographical evidence elicited from defendant as to his age violated his constitutional rights.
The crime was discovered by the parents at approximately 5:30 a.m. The police were immediately notified and arrived at the home of the parents at approximately 6:00 a.m. After talking to the parents and ascertaining the details of the crime, the defendant, who was still in the home, was arrested and advised of his rights under *Page 1363 Miranda. The record does not reflect that the officers informed defendant of the object and cause of his arrest, but the officer who testified about the arrest was not specifically questioned about whether he informed the defendant of the reason for his arrest. In Clay v. State, 184 So.2d 403 (Miss. 1966) we reversed and remanded because a defendant testified that he was not advised of the object and cause of his arrest and held that evidence obtained as a result of his illegal arrest could not be introduced at defendant's trial. In Clay we stated:
 This so-called arrest took place on September 26, 1964, seven weeks and five days after the commission of the crime. It is not clear from the record in this case whether or not a warrant was issued for the arrest of the defendant. The arresting officer did not testify so there is no testimony in the record that the accused was informed by the arresting officer of the object and cause of the arrest.
 The defendant testified that he was not so advised, so the defendant by his testimony made out a prima facie case of illegal detention and arrest.
 The burden of proof then shifted to the State to prove that there was probable cause for the issuance of a warrant or reasonable cause for the making of the charge. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The arresting officer or officers did not testify so there is no testimony whatsoever in the record to refute the prima facie case of illegal detention and arrest made out by defendant. (184 So.2d at 406).
Later, in Baylor v. State, 246 So.2d 516 (Miss. 1971), we addressed the same question and stated:
 The arrest of appellant without a warrant is challenged.
 Mississippi Code 1942 Annotated section 2470 (Supp. 1968) provides for an arrest without a warrant where the arresting officers have reasonable or probable cause to believe that (1) a felony has been committed and (2) the person who is arrested has committed it. This section has been construed and upheld by this Court in several cases. McCollum v. State, 197 So.2d 252 (Miss. 1967); Bradshaw v. State, 192 So.2d 387 (Miss. 1966); Shay v. State, 229 Miss. 186, 90 So.2d 209 (1956); Bird v. State, 154 Miss. 493, 122 So. 539 (1929); Kennedy v. State, 139 Miss. 579, 104 So. 449 (1925); Dunning v. State, 251 Miss. 766, 171 So.2d 315 (1965), cert. denied 386 U.S. 993, 87 S.Ct. 1310, 18 L.Ed.2d 339.
 Nor is the arrest under such circumstances invalid because of a failure of the arresting officer to advise the person arrested of its cause at the time of the arrest. Such an omission, however, does shift the burden of proving probable cause to the prosecution. Barnett v. United States, 384 F.2d 848
(5th Cir. 1967); Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (1962); Clay v. State, 184 So.2d 403
(Miss. 1966). (246 So.2d at 518).
In the case before us the state met the burden of proving probable cause for the arrest of the defendant. The officers responded to a call within thirty minutes, interviewed the parents, and arrested defendant, who was then present in the parents' home, after ascertaining there was probable cause to believe that a felony had been committed and the defendant had committed it. The failure to inform him of the object and cause of his arrest merely shifted the burden of proving probable cause to the state, which burden the state met.
Defendant's argument that his Fourth Amendment rights were violated fails because his clothing was taken as a result of a legal arrest. This procedure was in accord with our holding inWright v. State, 236 So.2d 408 (Miss. 1970) where we stated:
 In the instant case the officers took the personal possessions of the defendant after he was arrested. This search is always necessary for many reasons. Among those are: to discover weapons and means of escape; to prevent means of injury to the prisoner and others; to discover necessary medical requirements; to discover evidence in connection with the charge for which accused was arrested; *Page 1364 
to discover wounds and need for immediate first aid, and to preserve the property of the defendant. (236 So.2d at 411, 412). (Emphasis supplied).
Defendant's argument that his Fifth and Sixth Amendment rights were violated is fully answered by our decision in Baylor v.State, 246 So.2d 516 (Miss. 1971) where we stated:
 It is contended that the seizure and examination of appellant's clothing violated his rights under the Fifth Amendment against self-incrimination or his Sixth Amendment right to counsel. In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) the United States Supreme Court held that the withdrawal of the accused's blood and the admission of the analysis report did not violate self-incrimination rights under the Fifth Amendment. The Fifth Amendment privilege against self-incrimination protects an accused from being compelled to testify against himself, that is, to provide evidence of a testimonial or communicative nature, but does not extend to the securing of real or physical evidence. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schmerber v. California, supra.
 The United States Supreme Court, in Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), held that the clothing involved in that case was not `testimonial' or `communicative' evidence and that the accused's Fifth Amendment right against self-incrimination was not violated by its introduction upon the trial of the accused.
 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is directed toward the protection of an accused's rights under the Fifth Amendment. It does not deal with the question of searches and seizures. State v. Lyons, 76 Wn.2d 343, 458 P.2d 30 (1969); State v. Forney, 182 Neb. 802, 157 N.W.2d 405 [403] (1968).
 The Sixth Amendment right to counsel is not violated by a failure to provide counsel at noncritical stages of an investigation such as are involved in scientific analysis of an accused's fingerprints, blood sample, clothing, hair, etc. This view is supported by United States v. Wade, supra.
 It is established in Mississippi that an arresting officer may search a prisoner's person and the surrounding area pursuant to a lawful arrest. May v. State, 199 So.2d 635 (Miss. 1967) and Shay v. State, 229 Miss. 186, 90 So.2d 209 (1956). One of the fundamental purposes of such a search is to preserve vital evidence. (246 So.2d at 518, 519).
Following defendant's arrest he was advised of his constitutional rights, transported to the police station and placed in a cell where he was requested to remove his clothing and put on a prisoner's uniform. Defendant complied with this request and subsequent tests revealed the presence of semen on some articles of defendant's clothing. Therefore, the seizure and examination of defendant's clothing did not violate his Fifth and Sixth Amendment rights, furthermore, defendant was advised of his constitutional rights before his clothes were taken. It was not necessary for the officers to specifically inform him that any evidence found from an examination of his clothes could be used against him.
Defendant further argues that the biographical data, which included his age, should not have been introduced. This argument is based on the provisions of section 97-3-65(1) Mississippi Code Annotated (Supp. 1974) which provides that any person under eighteen years of age may not suffer the death penalty. This argument is without merit for two reasons: (1) defendant was advised of his constitutional rights before the data was secured from him, and (2) Miranda warnings do not apply to biographical data elicited from an accused for the purpose of booking the accused.
Appellant relies on Proctor v. United States, 131 U.S.App.D.C. 241, 404 F.2d 819 (1968), but better reasoned cases hold that *Page 1365 
the questions asked during routine bookings of suspects are usually held to be non-interrogative within the meaning ofMiranda. See Toohey v. United States, 404 F.2d 907 (9th Cir. 1968); State v. Rassmussen, 92 Idaho 731, 449 P.2d 837 (1969);People v. Hernandez, 69 Cal.Rptr. 448 (Cal.App. 1968);Clarke v. State, 3 Md. App. 447, 240 A.2d 291 (1968); Peoplev. Rivera, 26 N.Y.2d 304, 310 N.Y.S.2d 287, 258 N.E.2d 699
(1970).
It appears to us that the type interrogation with which the Court was concerned in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was an interrogation that had as its purpose the determination of the accused's connection with the commission of the crime being investigated and the revelation of the facts which reflect on his innocence or guilt. Routine questions asked in booking a suspect relating to his name, age, and place of residence are not proscribed by Miranda. Moreover, in this case defendant was given his Miranda warnings before the booking took place. When proof of age of a defendant is a necessary element in the prosecution of a case the better practice would be to introduce defendant's birth certificate together with proof that defendant is the person named in the birth certificate.
This case was considered by a conference of the judges en banc.
REVERSED AND REMANDED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, WALKER, BROOM, LEE and BOWLING, JJ., concur.
[1] Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Woodson v. North Carolina,428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); and Roberts v.Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).
[2] Enacted by Miss.Gen.Laws, Ch. 576 § 8 (1974).