Douglas Wesley appeals his conviction of rape of a female child under the age of 12. He was tried January 22, 1986, in the First Judicial District of Hinds County, and sentenced to life in prison. He assigns four errors, but combines them into three arguments on appeal:
 I. THE COURT ERRED IN ADMITTING THE TESTIMONY OF OFFICER *Page 1284 WASHINGTON AS PROOF OF THE AGE OF THE APPELLANT OVER THE OBJECTION OF APPELLANT.
 II. THE COURT ERRED IN ADMITTING THE TESTIMONY OF OFFICER ERIKSEN AND THE EXHIBIT OF BLOOD, HAIR AND SALIVA TAKEN FROM APPELLANT SUBSEQUENT TO ARREST WITHOUT MIRANDA WARNINGS.
 III. THE VERDICT OF THE JURY WAS CONTRARY TO AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
 I. FACTS
April 26, 1985, T.M., age 11, came home from school and began doing chores. About 4:30 p.m. her stepfather, Douglas Wesley, arrived. Wesley and the child's mother had separated several months before, and Wesley was not living with her, T.M. and T.M.'s two stepbrothers. He said he wanted to talk with T.M. According to T.M., Wesley took her into her mother's bedroom and told her she needed to make her own decisions and she should stop listening to her mother and grandparents. Then, Wesley grabbed her and forced her into her bedroom. He asked her if she wanted to have sex with him and she said it was wrong. With this, he began struggling with T.M. to remove her clothes, and at one point choked her. This scene was briefly interrupted when Wesley went to answer the telephone, but he returned this time and succeeded in removing T.M.'s clothes. He also placed a condom on the bed, but apparently never used it.
T.M. further testified that Wesley penetrated her vagina, stopped briefly to open a window, then continued intercourse until he heard a car door and discovered that his estranged wife had arrived home. Wesley then put on his clothes and left T.M.'s room and went to his wife's room.
Laura Wesley, Wesley's estranged wife, testified that when she arrived home from work some time after 5:00 p.m. she found Wesley in her bedroom. She first went into her room and then into her daughter's room. When she saw her daughter, the child was standing near her closet putting on a top. Mrs. Wesley asked what she was doing with her clothes off and T.M. replied, "Doug had been messing with her." Mrs. Wesley confronted Wesley with this statement and he replied that he did not know what she was talking about. Mrs. Wesley said at this time he had perspiration on his face and was lying on her bed. Mrs. Wesley also saw a condom on T.M.'s bed which she picked up and later turned over to police.
Mrs. Wesley then got her two boys and took T.M. to University of Mississippi Medical Center where T.M. was examined.
Dr. James Tutor testified he examined T.M. that evening and found that her hymenal ring was not intact, and he noticed blood secretions from her vaginal orifice. He concluded that she had been traumatized within a recent period. He prepared a rape pack which he turned over to a police officer. He found sperm cells which indicated the child had recently engaged in intercourse.
Officer R.J. Washington testified that he responded to a call at the University of Mississippi Medical Center and received the rape pack. Further, Washington testified that he arrested the defendant at the hospital. After the arrest Washington asked Wesley his age for identification purposes. The trial court allowed Washington to testify, over objection, that Wesley gave his birth date as 7/1/58, making him 27 years old at time of arrest.
Detective R.D. Eriksen of the Jackson Police Department testified that he observed Dr. Rodrigo Galvez obtain blood and saliva samples according to court order. This took place on May 9, 1985.
Debra Butler, Jackson Police Department forensic serologist, testified that she performed tests on items contained in the rape pack and on samples taken from Wesley. She testified that T.M. had type A *Page 1285 
blood and was a nonsecretor, meaning that her blood type was not evident from corresponding elements in her bodily fluids. Mrs. Butler discovered sperm cells present in the external swab, the internal swab, and the vaginal wash. The semen contained secretor factor H, associated with persons having type O blood. Wesley has type O blood and his saliva contained secretor factor H. Wesley could not be excluded from those persons who could be responsible for the semen, Mrs. Butler testified.
The trial court overruled Wesley's motion for a directed verdict at the close of the state's case.
Wesley then took the stand in his own defense. He testified that T.M. did not like being scolded by him since he was her stepfather, and he thought the child resented him because of marital troubles between him and the child's mother. T.M. acknowledged that she had gotten upset with Wesley because he and her mother would get into fights. When he arrived at the family's apartment April 26, 1985, Wesley said T.M. opened the door and then ran back into her room. Wesley stated he proceeded to his wife's room where he lay down and took a nap until Laura Wesley arrived. He remembered answering the phone, but heard no one on the line and then went back to sleep. He testified he never saw T.M. leave her room and she never came into Laura Wesley's room. He did not commit this offense, he said, and this is not the first time T.M. had lied.
He testified on cross-examination that he was born July 1, 1958, and he was 27 years old at trial.
The trial court denied Wesley's request for a peremptory instruction, and the jury returned a verdict of guilty as charged. The trial court denied Wesley's motion for a new trial, and this appeal followed.
 II. Did the Trial Court Err in Admitting Testimony Concerning Defendant's Admission of Age Made Without Benefit of Miranda Warnings?
Here Wesley argues that the trial court should not have admitted biographical information that Officer Washington obtained from Wesley after arrest, but allegedly before Wesley received his Miranda warnings.[1]
As noted in the facts, Officer Washington was allowed to testify that during questioning after arrest at University Hospital Wesley gave his birth date as 7/1/58, making him 27 at trial. There is nothing in the record indicating when or if Wesley was given his Miranda warnings. The state argues the incomplete record is fatal to Wesley's argument since the record does not support Wesley's claim that he was not given Miranda
warnings and the burden of a complete record lies with Wesley as appellant. Winters v. State, 473 So.2d 452, 457 (Miss. 1985) ("[A]n appellant is responsible for bringing to our attention and presenting to this court a record of trial proceedings to undergird his assignments of error.")
The trial court made no findings that Miranda warnings were given. The lack of findings could be important if we were to find that the officer interrogated Wesley. We agree, however, that Officer Washington's questioning did not amount to impermissible interrogation.
It is clear the trial court found that Wesley's statement of his birth date was elicited during routine "booking"-type questioning. The state relies on Upshaw v. State,350 So.2d 1358 (Miss. 1977), where the court dealt with an analogous factual setting. In Upshaw the defendant on trial for rape of a female child under the age of 12 had given his age to police officers during booking. This information was introduced at trial. Though in Upshaw the defendant was given Miranda
warnings, the Court found the argument against admission to be without merit *Page 1286 
 for two reasons: (1) defendant was advised of his constitutional rights before data was secured from him, and (2) Miranda warnings do not apply to biographical data elicited from an accused for the purpose of booking the accused. Appellant relies on Proctor v. United States, 131 U.S.App.D.C. 241, 404 F.2d 819 (1968), but the better reasoned cases hold that the questions asked during routine bookings of suspects are usually held to be non-interrogative within the meaning of Miranda. [citations omitted]
 * * * * * *
 Routine questions asked in booking a suspect relating to his name, age and place of residence are not proscribed by Miranda.
350 So.2d 1364-65. See also U.S. v. Gotchis, 803 F.2d 74 (2d Cir. 1986); but compare, U.S. v. Disla, 805 F.2d 1340, 1347 (9th Cir. 1986).
There is nothing to indicate this routine questioning normally associated with arrest and booking was anything more than just that. This assignment of error lacks merit.
 III. Did the Trial Court Err in Allowing into Evidence Blood, Saliva and Hair Samples?
Wesley argues it was error to admit samples of Wesley's blood, hair and saliva, exhibit # 2, and testimony concerning it because it was obtained in violation of Wesley's Fifth Amendment right not to incriminate himself.
This Court has held that there is no forced self-incrimination by obtaining a blood sample. See Williams v. State,434 So.2d 1340, 1344-45 (Miss. 1983); Schmerber v. California,384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). This argument lacks merit.
 IV. Was the Verdict Against the Overwhelming Weight of the Evidence?
Here Wesley assails his conviction on the basis of the alleged insufficiency of the evidence. His contention runs headlong into our limited standard of review:
 Once a jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.
Rawls v. State, 513 So.2d 942, 943 (Miss. 1987). See also,McFee v. State, 511 So.2d 130, 133 (Miss. 1987); Burge v.State, 472 So.2d 392, 396 (Miss. 1985); Neal v. State,451 So.2d 743, 748 (Miss. 1984); Dickerson v. State, 441 So.2d 536, 538 (Miss. 1983).
When the evidence as outlined under Point I is viewed in this light, we cannot disturb the verdict in this case.
To the extent we understand Wesley to seek review of the denial of his motion for new trial, we likewise find no error. Our standard of review of the trial court's denial of a motion for a new trial under Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice is limited to determining whether the trial court abused its discretion. Weeks v. State,493 So.2d 1280, 1283 (Miss. 1986); Gavin v. State, 473 So.2d 952, 956-57 (Miss. 1985). Here there was direct testimony and corroborating physical evidence supporting the jury's verdict. There is no abuse of discretion.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
[1] Wesley does not appear to argue there was insufficient evidence of his age. His statement appears sufficient, though perhaps not preferred. See Bandy v. State, 495 So.2d 486, 493-94 (Miss. 1986). *Page 1287