# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00586-COA

**LARRY WATTS, JR. A/K/A BOO JACK A/K/A**
**LARRY WATTS**

APPELLANT

**v.**

**STATE OF MISSISSIPPI**

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/03/2014 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE DOWDY |
| | DUNBAR DOWDY WATT |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| | JASON L. DAVIS |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF TWO COUNTS OF FELONY CHILD ABUSE AND SENTENCED ON EACH COUNT TO FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, WITH THE SENTENCES TO RUN CONCURRENTLY, AND TO PAY A $1,000 FINE |
| DISPOSITION: | AFFIRMED - 06/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT**:

¶1.     Larry Watts appeals his conviction and sentence in the Walthall County Circuit Court.

On appeal, Watts asserts that the oral and written statements and confessions that he gave

to law-enforcement officers were inadmissible, because they were obtained as a result of a warrantless arrest. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Larry Watts lived with Sara Lowery and her four-year-old minor child "BAW,"[1] in Walthall County, Mississippi. Lowery would leave BAW in Watts's care while she went to work, and Watts normally babysat BAW and Watts's biological son whenever Lowery was away. On September 16, 2012, Lowery brought BAW to the emergency room at Southwest Regional Medical Center in McComb, Mississippi, because BAW was complaining of stomach pains. After doctors at Southwest examined BAW, they determined that the severity of his injuries necessitated him being airlifted to the children's hospital in Jackson, Mississippi. Upon arriving to the hospital, a pediatric specialist determined that BAW had abdominal trauma to his liver and that his pancreas was bleeding into his abdomen.

¶3. Medical personnel concluded that BAW's injuries were commensurate with signs of child abuse and contacted the Walthall County Sheriff's Department. Investigator Gerald Magee received a call from dispatch, requesting that he contact Investigator Clay Barrett of the Summit Police Department. After speaking with Barrett, Magee dispatched Deputy Joe Michael Williams to Lowery and Watts's home to detain him for questioning. There was an unrelated outstanding misdemeanor warrant for Watts in another jurisdiction that the sheriff's office was aware of and relied upon when detaining Watts. When Williams arrived to the residence, he asked Watts to step outside and place his hands on the hood of the vehicle.

---

[1] To protect the minor's identity, we substitute initials for his name.

Watts testified that he asked Williams "what was going on," and Williams never responded to his question. Watts was searched for weapons and placed in the back of the patrol car, where he was detained until Magee's arrival.

¶4. At trial, Magee testified that when he arrived, he walked to the patrol car and advised Watts of his rights. Magee then asked Watts if he wanted to speak with him, and asked Watts if he knew anything about an injury that had occurred. Watts stated to Magee that his biological son was playing with BAW and hit him with a flashlight. Watts further stated that he asked BAW if he was "OK" and allegedly BAW was unharmed. Watts contended that the only time he touched BAW and his son was to bathe them. Magee made an audio recording of the conversation he had with Watts at his home and transported Watts to the Walthall County Jail in Tylertown.

¶5. After Watts arrived to the county jail, he was provided with a copy of the misdemeanor warrant that Magee relied upon in arresting him. Watts then made a written recitation of the non-inculpatory oral statement that he made to Magee while he was detained at his residence. That statement was made at 12:22 a.m. At 1:11 a.m., Watts was read his rights again and signed a waiver-and-acknowledgment form indicating that he was advised of his rights. An audio recording of Watts's acknowledgment and waiver of rights was made during that interaction. Magee also informed Watts that they were at the sheriff's department to discuss a possible injury to a child. During that interview, Watts made another written statement around 1:52 a.m., where he admitted to "accidently" punching BAW in the stomach. Following that statement, Magee arrested Watts for felony child abuse, and Watts

3

was booked in the Walthall County Sheriff's Office. Watts made another written statement around 2:00 a.m. In that statement, Watts admitted that in an unrelated incident, BAW's arm was broken when Watts helped him pull it out of a recliner.

¶6. Later that day, Watts made another oral and written statement around 2:16 p.m., where he admitted that on the night he was arrested, he punched and kneed BAW in the stomach out of frustration. Watts stated that he was remorseful for hurting BAW and told him so. Watts's final written statement was made at 2:20 p.m., admitting that he pulled BAW's arm behind his back to stop him from rough-housing, and he heard a snap. Watts stated that he immediately checked BAW's arm and felt that it was broken.

¶7. Each statement was written on a "voluntary statement" form, which enumerated the *Miranda*[2] rights at the top. Magee also made audio recordings of each statement. Watts was tried and convicted of child abuse and sentenced to forty years in the custody of the Mississippi Department of Corrections.

¶8. On appeal, Watts argues that the statements he made to the police were the result of a warrantless arrest, without probable cause. Watts broadly argues that the circuit court erred in overruling his objection to all written statements and audio recordings made by him. He contends that the statements were made following a warrantless arrest, with no probable cause. He also contends that the statements and recordings were the fruit of the poisonous tree and should have been excluded from evidence. We do not agree.

**STANDARD OF REVIEW**

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶9. In reviewing a trial court's denial of a motion to suppress confessions, "we apply the familiar general rule that since the trial court sits as the fact-finder when determining the issue of whether an accused's confession has been intelligently, knowingly and voluntarily given, we will only reverse the trial court's determination of this issue when such determination is manifestly wrong." *Keller v. State*, 138 So. 3d 817, 835 (¶16) (Miss. 2014). (citing *Glasper v. State*, 914 So. 2d 708, 716 (¶21) (Miss. 2005)).

¶10. "[W]e will not disturb the trial court's determination on the admissibility of a confession unless the trial court applied an incorrect legal standard, committed manifest error, or rendered a decision which was contrary to the overwhelming weight of the evidence." *Id.* To determine if probable cause exists, this Court conducts a de novo review. *Trejo v. State*, 76 So. 3d 702, 706 (¶8) (Miss. Ct. App. 2010). But this de novo review is limited to the trial court's "decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards." *Id.*

¶11. "[A]ll evidence obtained by virtue of illegal actions of the police is not [necessarily considered] fruit of the poisonous tree. The test is whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality instead of by means sufficiently distinguishable to be purged of the primary taint." *Hooker v. State*, 716 So. 2d 1104, 1112 (¶28) (Miss. 1998).

**DISCUSSION**

¶12. Watts argues the circuit court erred by refusing to suppress all of his statements to law enforcement. Watts was detained by the use of a misdemeanor warrant from another

5

jurisdiction. Under Mississippi Code Annotated section 99-3-7(2) (Rev. 2015), when practicable, he was presented with the warrant at the sheriff's department. Williams did not explain the reason for Watts's detainment to him. However, when Magee arrived to question Watts, Magee instructed Watts of his rights and proceeded to ask him if he wanted to talk to Magee. Magee asked Watts if he knew anything about an injury that had occurred. Watts voluntarily gave a statement suggesting BAW was injured as a result of playing with Watts's biological son. Watts ultimately admitted to abusing BAW, and it was then that the officials arrested him for felony child abuse. Watts's contention that his arrest was warrantless and without authority is without merit.

¶13. An arrest without a warrant is lawful if a felony has occurred and the arresting officer has reasonable grounds to suspect, at the time of the arrest, that the person arrested committed a felony offense. *Cooper v. State*, 145 So. 3d 1219, 1226 (¶25) (Miss. Ct. App. 2013). Similarly, an arrest without a warrant is lawful if the person making the arrest does so on a charge that the person to be arrested committed a felony, and the charge was made upon reasonable cause. *See Powe v. State*, 235 So. 2d 920, 922 (Miss. 1970). Regarding the defendant's confessions, the United States Supreme Court has previously held that the *Miranda* rule is employed to protect against violations of the Fifth-Amendment Self-Incrimination Clause. *United States v. Patane*, 542 U.S. 630, 636 (2004). "The exclusionary prohibition against [the] 'fruit of the poisonous tree' applies to violations of the Fifth-Amendment privilege against self-incrimination." *Chamberlin v. State*, 989 So. 2d 320, 336 (¶54) (Miss. 2008) (quoting *Brown v. Illinois*, 422 U.S. 590, 599 (1975)).

¶14. The Mississippi Supreme Court has held that the failure of an officer to advise the person of the circumstances for the arrest does not invalidate the arrest. *Upshaw v. State*, 350 So. 2d 1358, 1363 (Miss. 1977). However, such an omission does shift the burden of proving probable cause to the State. *Id*. But regardless of whether Magee had probable cause to arrest Watts for felony child abuse, the outstanding warrant in another jurisdiction permitted the officers to detain him for the purpose of questioning him regarding the suspicion of felony child abuse.

¶15. Upon arrival to the sheriff's department, Magee went over an information form with Watts to gather basic information. Magee also provided Watts with a copy of the misdemeanor warrant, which vitiated Watts's claim that the arrest was warrantless. Watts was then given a voluntary-statement sheet, where he made a written recitation of the oral statement he made to Magee while detained at his home. That statement was made around 12:22 a.m. At 1:11 a.m., Watts was read his rights again and signed a waiver-and-acknowledgment form indicating that he was advised of his rights. Moreover, during the audio recording, Magee stated to Watts that they were at the sheriff's department to discuss a possible injury to a child. Therefore, Watts was apprised at that moment of his rights and the reason that he was being questioned. Watts was also aware that he could end the interview, ask for an attorney, or refuse to speak with Magee at any time.

¶16. Watts's third statement was made at 1:52 a.m., and it was his first admission of guilt to abusing BAW. It was then that he was arrested and booked for felony child abuse. Watts made another inculpatory statement around 2:00 a.m., where he admitted to abusing BAW

in an incident unrelated to the injuries BAW sustained the night of Watts's arrest. During that statement, Watts admitted to jerking and yanking BAW's arm out of a recliner, causing BAW's arm to break. As a result of Watts's voluntary statements, Magee obtained probable cause for Watts's arrest at the sheriff's department.

¶17. Twelve hours later, Magee questioned Watts again regarding the injuries BAW had sustained the night of Watts's arrest, and he made two additional inculpatory statements, admitting to purposefully injuring BAW the night of his arrest. Watts's confessions were made on voluntary-information sheets, which contained a reiteration of his *Miranda* rights. As such, Watts received at least six notifications of his *Miranda* rights. Therefore, we find that he was sufficiently apprised of his rights at the time that he confessed to abusing BAW.

¶18. There was no implication of coercion or undue pressure on Watts to confess to abusing BAW. It should be noted that Watts admitted to kicking BAW in the stomach out of frustration twelve hours after he gave his first inculpatory statement. He had time to consider whether to refrain from making any further statements to the police, yet he continued to make inculpatory statements.

¶19. A trial judge's admission of a confession will only be overturned where an incorrect legal standard was applied, manifest error was committed, or the decision was contrary to the overwhelming weight of the evidence. *Kircher v. State*, 753 So. 2d 1017, 1023 (¶27) (Miss. 1999). By the time Watts arrived to the sheriff's department, he had enough time to consider whether to invoke his right to remain silent or ask for counsel. He waived those rights and continued to speak with Magee. Watts was aware that he could refuse to speak with Magee

8

and acknowledged that he could ask for a lawyer at any time, yet he did not. Watts admitted to abusing BAW in four separate statements, with two of the statements being obtained within twelve hours of the first inculpatory statement. Watts was also aware that he was being questioned regarding an injury to a child and continued to speak. Therefore, we find Watts's confessions were not fruit of the poisonous tree, arising from a warrantless arrest.

¶20. Accordingly, we find that the trial court did not err in admitting Watts's confessions into evidence.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY OF CONVICTION OF TWO COUNTS OF FELONY CHILD ABUSE AND SENTENCE ON EACH COUNT OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POSTRELEASE SUPERVISION, WITH THE SENTENCES TO RUN CONCURRENTLY, AND TO PAY A $1,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., ISHEE, CARLTON AND GREENLEE, JJ., CONCUR. FAIR, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., BARNES AND WILSON, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**