801 So.2d 762 (2001)
Paul Revere HODGE, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01778-COA.
Court of Appeals of Mississippi.
November 13, 2001.
*766 Wanda Turner Lee Abioto, Memphis, TN, for Appellant.
Office of the Attorney General by John R. Henry Jr., for Appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
LEE, J., for the Court:
¶ 1. Paul Revere Hodge was convicted by a jury for two counts of burglary of a building. Feeling aggrieved by his conviction he has filed a timely appeal and presents the following issues: (1) whether the trial judge substantially prejudiced Hodge by failing to suppress evidence and a statement obtained from Hodge at the time of his arrest, (2) whether the trial judge erred when he admitted testimony regarding other crimes and wrongs, (3) whether the trial judge erred in denying Hodge's jury instructions 2, 4, and 5, and (4) whether the trial judge abused his discretion in denying Hodge's motion for a new trial and judgment notwithstanding the verdict. This Court holds that these issues are without merit and affirm the trial court.

FACTS
¶ 2. On November 9, 1998, the orthodontic office of Dr. Libby and Dr. Dooley and a pediatric dental clinic which were located adjacent to each other in the same building, were burglarized.
¶ 3. At trial, Ms. Comer, an employee of Dr. Libby and Dr. Dooley, testified that on November 9, 1998, she arrived at work at approximately 6:30 a.m. She was the first one to arrive at work. Upon entering the *767 building she discovered the building's alarm on the floor, as well as glass. When Ms. Comer attempted to use the telephone she realized that it was dead. Thereafter, Ms. Comer called her employer who in turn instructed her to call the police, and she did so.
¶ 4. Once the police arrived at the scene, Detective Stewart was examining the offices and observed that both offices had its door locks twisted off with what appeared to be some sort of pliers, at the rear of the building the phone lines had been cut, and the alarm key pad in both offices had been torn off the wall and disabled. Additionally, the second door of Dr. Libby and Dr. Dooley's office contained glass and had been shattered. The second door leading into the pediatric dental office consisted of wood and had been pried open. Testimony revealed that approximately $100 had been taken from each place of business.
¶ 5. While conducting the investigation, the counter tops in the pediatric dental clinic were dusted for prints and a latent shoe print was found and lifted. After the physical examination of the crime scene was concluded, Detective Stewart telephoned the Memphis Police Department.
¶ 6. Detective Stewart inquired whether they had had any burglaries with similar features. In response, Detective Stewart was provided with the name of Paul Revere Hodge, as well as his automobile's description and a tag number. Detective Stewart issued a BOLO (i.e., "be on the lookout") for Hodge, and instructed officers that if seen, to detain Hodge and contact him.
¶ 7. On January 11, 1999, at approximately 3:30 a.m., Officer Jason Gwatney, with the Southaven Police Department was on patrol. Officer Gwatney and a fellow officer were positioned in an automobile in an Exxon parking lot when Officer Gwatney saw a vehicle fitting the BOLO description for Hodge.
¶ 8. Officer Gwatney proceeded to follow the automobile to confirm if it was the automobile for which the BOLO had been issued. While behind the automobile, he witnessed it weaving within its lane, as well as crossing over into the other lanes. As a result of the weaving, the officers executed a traffic stop. After the automobile was stopped, the officers discovered the driver was Paul Revere Hodge, and he was driving with a suspended driver's license. Since Hodge's driver's license was suspended, he was detained and taken to the police station. During the traffic stop the officers received permission from Hodge to search his automobile. However, due to the inclement weather, the search was delayed. While Officer Gwatney took Hodge to the police station, the automobile was taken to a garage and searched.
¶ 9. As a result of searching the automobile and making an inventory of its contents, the officers discovered pliers, wire cutting pliers, an adjustable wrench, a flat head screwdriver and another flat head screwdriver with the tip broken off, a pair of cloth or fabric gloves, and a black knit hat.
¶ 10. Once Officer Gwatney and Hodge arrived at the police station, he read Hodge his Miranda rights. Hodge was also given a document that listed his rights under Miranda. Hodge placed his initials beside each of the rights and signed his name at the end of these rights acknowledging that he had read or had had them read to him and fully understood his rights. Nevertheless, Hodge did not sign a waiver of rights. Subsequently, Hodge made a statement and one of his shoes was taken for examination.
¶ 11. Detective Hammons with the Southaven Police Department testified he had *768 spoken with Hodge. Hammons stated that prior to any questioning he had made sure Hodge had been informed of his Miranda rights. Hammons then proceeded to talk with Hodge and stated that Hodge had represented that "it was his job as far as burglaries went, and it was our job to catch him and that he liked that. He enjoyed the cat and mouse game of his job and our job." Several other officers who testified confirmed the essence of Hodge's statement and the fact that prior to his statement he had been read his Miranda rights. Nevertheless, no statements were made by Hodge that admitted involvement in the two burglaries in the case at bar.
¶ 12. The shoe taken from Hodge was sent to the crime lab for comparison with the shoe print that had been lifted from the counter in the pediatric clinic. Testimony was presented from a forensic scientist with the Mississippi Crime Lab who had examined the lifted shoe print in comparison with the pattern on Hodge's shoe. The scientist concluded that Hodge's shoe produced the impression on the counter in the pediatric dental clinic.
¶ 13. There was also testimony from another forensic scientist who had examined pliers to see if they were the ones that twisted the locks at Dr. Libby and Dr. Dooley's office and the pediatric clinic. The scientist stated that while the pliers found in Hodge's possession possibly produced the marks on the collar of the lock, he could not say they were the pair that made the marks to the exclusion of all others.
¶ 14. Testimony was also presented regarding Hodge's involvement in a burglary in Shelby County, Tennessee. Officer Thomas Bolling with the Shelby County Sheriff's Department testified that on August 25, 1998, he was working a second job with Imperial Security, and at approximately 4:45 a.m. or 4:50 a.m. an alarm sounded. Officer Bolling stated that he witnessed the door of a building close and then saw a black shadow against the wall; thereafter, a chase ensued. Officer Bolling eventually apprehended the suspect and identified him as Hodge. He explained that when he apprehended Hodge, Hodge discarded a brown bag and a pair of gloves and was wearing a "skull" cap. As aforementioned, similar items were recovered from Hodge in the case at bar by the Southaven Police Department. Officer Bolling made an in-court identification of Hodge. Officer Charles Mays, like Officer Bolling, was employed with the Shelby County Sheriff's Department and also testified at the trial regarding the events of August 25, 1998.
¶ 15. Officer Mays stated that he was on patrol and he too heard the alarm and went to the building to investigate the scene. When examining the building he discovered that all the wires had been cut and the door lock had been twisted out. Additionally, Hodge had a bag of assorted tools, such as-screwdrivers, wrenches, and pliers.
¶ 16. After hearing all of the evidence the jury found Hodge guilty of two counts of burglary of a building.

DISCUSSION

I. WHETHER THE TRIAL COURT SUBSTANTIALLY PREJUDICED HODGE BY FAILING TO SUPPRESS EVIDENCE AND A STATEMENT OBTAINED FROM HODGE AT THE TIME OF HIS ARREST.
¶ 17. Hodge appears to begin his argument by contending that evidence was improperly admitted by the trial judge because it was a result of a stop for which the officers lacked probable cause. Hodge asserts that the officers merely used the *769 pretext of a traffic violation to detain and subsequently arrest him for the burglaries.
¶ 18. There are generally three manners which an officer may attempt to prevent crime, detect violations, make identifications, or apprehend criminals: (1) Voluntary conversation: An officer is allowed to have a voluntary communication with an individual regardless of what facts are known to the officer because it involves no force and no detention of the individual interviewed; (2) Investigative stop and temporary detention: When an officer stops and temporarily detains an individual it is not an arrest, when reasonable circumstances are present an officer may stop and detain a person to settle an ambiguous situation without having sufficient knowledge to justify an arrest; and (3) Arrest: An officer may make an arrest only when he/she has probable cause. Singletary v. State, 318 So.2d 873, 876 (Miss.1975).
¶ 19. The facts in the case at bar bring it within the purview of either the first or second type of action. In the case sub judice, Officer Gwatney had been apprized of the BOLO for Hodge's automobile. On January 11, 1999, at approximately 3:30 a.m., Gwatney saw a vehicle which he thought matched the BOLO description. He explained that he did not initiate the pursuit with the intent to arrest the driver, and that once behind the automobile he noticed weaving which provoked the stop. While Hodge was detained Officer Gwatney not only discovered that Hodge's license was suspended, but also received Hodge's permission to search the automobile.
¶ 20. Police officers have been vested with the authority to detain a person without actually arresting him for investigatory purposes. Haddox v. State, 636 So.2d 1229, 1234 (Miss.1994). An officer is vested with the legal authority to make an investigative stop, not when he has probable cause to arrest, but when he has a reasonable suspicion that the accused is involved in a felony. Floyd v. State, 500 So.2d 989, 992 (Miss.1986). "[G]iven reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest." Shannon v. State, 739 So.2d 468, 471(¶ 13) (Miss.Ct.App.1999) (citing Estes v. State, 533 So.2d 437, 441 (Miss. 1988)) (quoting Griffin v. State, 339 So.2d 550, 553 (Miss.1976)). "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Singletary, 318 So.2d at 877 (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Additionally, the Mississippi Supreme Court has addressed the issue of suppression of evidence based on lack of probable cause in Haddox v. State, 636 So.2d 1229, 1233 (Miss.1994). In Haddox the court analyzed a case which we conclude also applies in the case at bar, as it regards its discussion of the initial apprehension of an individual due to a traffic violation and the right of the officer to conduct a subsequent investigation and arrest. The following is an excerpt from Haddox:

Chapman v. State, 284 So.2d 525 (Miss. 1973), involved a pullover of a car for speeding. Upon stopping the car, an officer noticed that the car's occupants fit a description of persons who had just robbed a grocery store. Witnesses at the store had previously given the sheriff some descriptions, and the sheriff had given the information to all officers via radio.
*770 At the scene of the stopped car, the officers waited with the suspects for the arrival of a witness who had been summoned to identify the suspects. This witness, who had been in the grocery store during the robbery, arrived and identified the car's occupants as the robbers. At that point, they were arrested and searched, producing incriminating evidence. The defendants moved to suppress the evidence, claiming that the officers did not have probable cause to arrest them. The Court stated:
A crime had been committed. The persons who committed the crime were fleeing from the scene of the crime in an automobile. They were apprehended because of a traffic violation, and when it appeared that they were apparently the persons who were said to have committed the crime, it became the duty of the officer to detain them. Section 2470, Mississippi Code 1942 Annotated (Supp. 1972). When they were identified, it became the duty of the sheriff to arrest them. (emphasis theirs).

Chapman, 284 So.2d at 527. Apparently the Chapman court did not find the detainment and wait for the witness' identification to have been a unreasonable seizure or a full-fledged arrest requiring probable cause to arrest.
Haddox v. State, 636 So.2d at 1235-36. (citations omitted).
¶ 21. We hold that the seizure of the tools and Hodge's shoe were not only the result of a valid investigative stop, but were obtained pursuant to permission to search the automobile given by Hodge. See Graves v. State, 708 So.2d 858, 862-63(¶ 22) (Miss.1997). Officer Gwatney's actions were reasonable under the circumstances. Therefore, we find this argument without merit. However, our discussion does not end here. Hodge argues that the statement and evidence were not admissible because the officers did not tell him the reason for his arrest.
¶ 22. In Williams v. Lee County Sheriffs Dept., 744 So.2d 286, 294-95 (¶¶ 19-21) (Miss.1999), the Mississippi Supreme Court once again addressed the argument of an officer's failure to inform an individual of the basis for arrest. The court looked to Miss.Code Ann. § 99-3-7 which with some exceptions requires an officer to inform an accused of the "object and cause of the arrest without a warrant." Williams, 744 So.2d at 294(¶ 19). The Mississippi Supreme Court reiterated its previous holding that the failure to inform a defendant of the object and cause of the arrest does not invalidate the arrest in certain incidences. Id. (citing Upshaw v. State, 350 So.2d 1358, 1363 (Miss.1977)). When an officer fails to tell an individual why he or she is being arrested it simply shifts the burden of proving probable cause to the State. Id. The testimony of Officer Gwatney, the officer who detained and arrested Hodge, leaves this Court the latitude to assume that perhaps Hodge had not been told why he had been initially detained. Now the question becomes whether the officers had probable cause to arrest him.
¶ 23. To determine whether an officer has probable cause to arrest an individual, we must examine the facts and circumstances that would have been within their knowledge and ask if that information was reasonably trustworthy and sufficient to warrant a reasonably prudent person to believe that a crime had been committed. Id. at 294(¶ 20). Additionally, Miss.Code Ann. § 99-3-7 (Rev. 2000) specifically allows an officer to arrest a person without a warrant under the following circumstances: § 99-3-7. When arrests may be made without warrant.

*771 (1) An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.
The central issue is "the objective (albeit fact-specific) question whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the officer possessed." Id. at 295 (¶ 20) (citations omitted).
¶ 24. We conclude that the officer properly relied on the NCIC computer report which indicated that Hodge's license had been suspended, as well as the information that had been provided in the BOLO to make the initial detention and subsequent arrest of Hodge. Therefore, we find that his arrest was legal. Since Hodge's arrest was legal we decline to hold that the statement or any evidence obtained from him and placed into evidence at trial should have been excluded.
¶ 25. Finally, Hodge attacks the admission of the evidence on the basis that his Miranda warnings were not properly administered. Hodge attacks the effectiveness of the issuance of his Miranda rights on two grounds: (1) The officers failed to give his Miranda warnings at the scene of the arrest, and (2) there was no documentation which revealed a waiver of his right to remain silent. We quickly dispose of both of these issues.
¶ 26. The first argument is without merit because the record does not disclose that Hodge made any statements at the scene of the arrest. The second issue regarding the necessity of documentation of a waiver of one's right to remain silent has been previously addressed by the Mississippi Supreme Court which stated:
[n]or are we aware of any which requires that a waiver of an accused's constitutional privileges against self-incrimination, right to counsel, etc. must be in writing and signed by the accused before inculpatory statements made by him and otherwise freely and voluntarily given are admissible in evidence. Such a statement is admissible provided the accused has been afforded the protection of the Miranda warning and he thereafter knowingly and intelligently waives his rights and freely and voluntarily makes the statement.
Davis v. State, 320 So.2d 789, 790 (Miss. 1975). This Court has recently reiterated the adequacy of orally administering Miranda warnings when it stated "oral Miranda warnings and waivers are effective if proven to the satisfaction of the trier of fact." Dees v. State, 758 So.2d 492, 495 (¶ 7) (Miss.Ct.App.2000). The trial judge is the trier of fact in this instance and reviews the totality of the circumstances to make a determination of voluntariness. See Hemmingway v. State, 483 So.2d 1335, 1336 (Miss.1986). The totality of the circumstances revealed in the record discloses that the trial judge committed no error in determining that the statement was admissible. Therefore, this issue is without merit.

*772 II. WHETHER THE TRIAL COURT ERRED WHEN IT ADMITTED TESTIMONY REGARDING OTHER CRIMES AND WRONGS.
¶ 27. Hodge contends that when the trial judge reviewed his motion in limine to exclude the evidence of a previous burglary he failed to perform the balancing test under Mississippi Rules of Evidence Rule 403.
¶ 28. The trial judge held that the pending charge against Hodge for burglary was admissible under Mississippi Rules of Evidence Rule 404 for identity and "to show why they were looking for him ... and had the BOLO out." In his findings of fact and conclusions of law the trial judge did not specifically mention Mississippi Rules of Evidence Rule 403 or the balancing of the probative value of the evidence versus its prejudicial effect.
¶ 29. The Mississippi Supreme Court adopted the Mississippi Rules of Evidence to establish guidelines for the admissibility of relevant evidence. Mackbee v. State, 575 So.2d 16, 23-24 (Miss. 1990). "Evidence of other crimes is generally not admissible to show that the party acted in conformity with past behavior, but Rule 404(b) provides an exception as to the admission of other crimes. The comment to Rule 404(b) states in pertinent part: (b)... Evidence of another crime, for instance, is admissible where the offense in the instant case and in the past offense are so inter-connected as to be considered part of the same transaction." Neal v. State, 451 So.2d 743, (Miss.1984); M.R.E. 404(b) cmt. The Mississippi Supreme Court has stated: "Evidence admissible under Rule 404(b) is subject to the prejudice test of Rule 403, and a trial court is required to consider whether the probative value of the questionable evidence is outweighed by undue prejudice. Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass." McCullough v. State, 750 So.2d 1212, 1216(¶ 15) (Miss. 1999) (emphasis theirs). However, the ultimate question is whether the trial judge is required to explain on-the-record its balancing of the probative value of other bad acts versus it prejudicial effect.
¶ 30. Mississippi Rules of Evidence Rule 403 has been the subject of several Mississippi Supreme Court opinions. In this Court's view, there is no requirement that specific words be spoken by the trial court, though there is a need for the trial court to take Rule 403 into account. Even if we cannot reasonably interpret the judge's evidentiary ruling as having considered Rule 403, harmless error analysis then applies.
¶ 31. What trial judges have to do when confronted with such issues is this:
whenever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to M.R.E. 403 balancing analysis and a limiting instruction. The court shall conduct an M.R.E analysis and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.
Smith v. State, 656 So.2d 95, 100 (Miss. 1995). This appears to be the first instance in which the supreme court mandated a Rule 403 balancing analysis in regards to Rule 404(b) evidence.
¶ 32. What Smith does not make clear is whether the balancing must be articulated on the record. In a later civil case, subject of course to the same evidentiary rules, the Mississippi Supreme Court stated that a "trial court is required to balance the potential for prejudice against the probative value of the evidence under Rule 403." Mississippi Power & Light, Co. v. *773 Lumpkin, 725 So.2d 721, 732(¶ 54) (Miss. 1998). When "the trial court makes specific findings on the record concerning its determinations under Rule 403, proper review is facilitated." Id. at 733(¶ 55). That is far from a requirement that absent such specific findings, proper review requires reversal. In Lumpkin the balancing was not made on-the-record, but the court never suggested that reversal was required for that reason. Instead, the evidence of probative value and prejudice were evaluated by the court. Id. at 732-33(¶ 55).
¶ 33. This Court considered these issues in Lindsey v. State, 754 So.2d 506 (Miss.Ct.App.1999). Lindsey objected to the testimony of a witness concerning the theft of a pistol and an automobile as improper character evidence. Id. at 512(¶ 35). In ruling on Lindsey's motion in limine, the following colloquy took place:
THE COURT: The court is persuaded that the evidence by way of testimony of witness Lomax about the taking of a vehicle certainly goes to preparation in terms of preparing for the commission of a crime which apparently he's going to testify was committed after the taking of that vehicle and it is evidence of a plan to carry out whatever was necessary in the furtherance of the commission of the crime which is the basis for the indictment that brings us here. And so in applying Rule 404(b), in examining the exceptions which will allow that evidence of other crimes is admissible, the court is persuaded that as to the exceptions regarding preparation and plan, the evidence of the other crime is admissible pursuant to those exceptions and hence the motion for mistrial should be and is here by denied. And motion to exclude any evidence or other crimes, specifically as it relates to the taking of the vehicle which according to the testimony of this witness immediately preceded the crime in this case, is admissible.
DEFENSE COUNSEL: I think the Court also has to make a ruling under rule 403 the probative value outweighs the prejudicial effect if Court deems that to be so.
THE COURT: Why?
DEFENSE COUNSEL: I think that's a requirement that even if it's admissible under 404(b) that the Court has to make a 403 ruling and I think the Court has done that in its statement but I think you have to come back and have a 403 ruling. That's the way I understand it.
MR. PETERS: In other words, what you have already said is a weighing process.
THE COURT: I hear that but I'm not convinced that I need to make some finding under 403 after I've applied 404(b) and made a finding that it's admissible. Have you got some law that says I've got to now apply 403.
DEFENSE COUNSEL: I think I could get some but I think the Court has done it. The only thing I think the court hasn't done is mention Rule 403 which says that although relevant, which the Court has ruled, evidence may be excluded if the probative value outweighs the prejudicial value. I think the Court has said that but has not mentioned 403. I was just making that for the record in case it goes up.
THE COURT: All right, it's done for the record. You have made it. Anything further from the state?
Id. at 512-13 (¶ 36).
¶ 34. This Court noted that the trial judge "considered the admissibility of the evidence under 404(b) and 403 in a one-step process instead of a two-step process as is required." Id. at 513(¶ 37). Any doubt of whether the analysis was done *774 was removed when the trial judge stated "All right, it's done for the record." Id. We found that "reasonable interpretation" of the trial judge's quoted statements was that the balancing analysis was undertaken, and in any event, "the record is sufficient for us to make a determination as to whether the trial judge abused his discretion...." Id. at 514(¶ 39).
¶ 35. We concluded our review by stating that "we are not aware of any Mississippi Supreme Court case mandating the consequences for a trial court not following the admonition in Smith, nor are we aware of any Mississippi Supreme Court case proscribing harmless error consideration by the appellate court when the trial court has failed to perform the required balancing test." Id.
¶ 36. In fact, since Lindsey the Mississippi Supreme Court has held that failure to apply the Rule 403 balancing on-the-record could be found to be harmless error. McKee v. State, 791 So.2d 804(¶ 23) (Miss.2001). There the trial court admitted evidence over the objection of the defense counsel regarding the prior use of crack cocaine although McKee was on trial for robbery. Id. The supreme court noted that the trial court committed error by not applying "a M.R.E. 403 balancing test on the record," but that such error was harmless. Id. The error was harmless due to the overwhelming evidence of McKee's guilt and McKee's attorney's repeated references to McKee's prior convictions for theft. Id. at (¶ 24).
¶ 37. The recent decision in McKee does state that an on-the-record balancing is required. It is also evident that normal harmless error analysis is appropriate. We now must apply these rules to the facts of this case.
¶ 38. A fair reading of the exchange between Judge Ready and attorneys Brewer and Abioto demonstrates that the judge performed a Rule 403 analysis. Abioto stated that the evidence of the burglary arrest was prejudicial and its prejudicial effect overrode the probative value. That had to be considered a raising of Rule 403. Judge Ready, in making his ruling, stated that he believed that the evidence was admissible under Rule 404(b) as it went to identity. M.R.E. 404(b) (evidence of other bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."). Judge Ready then stated: "I am real restrictive on this. It may be the second time in my five years on the bench because I do recognize the problem; however, in this case, not only is it an exception on the identity...." The reasonable assumption is that Judge Ready's "recognizing the problem" concerned the prejudicial effect of the testimony and that unlike most cases he found that the prejudice did not substantially outweigh the probative value. In addition, the judge granted a limiting instruction as to the testimony. That too reveals that he understood the requirements of Rule 403.
¶ 39. What an "on-the-record" balancing requires is problematic under these precedents. The trial judge here said enough on the record to indicate that he knew of his duties under Rule 403 and was fulfilling them. He never said "I find the probative value of the evidence is not substantially outweighed by the prejudice." If that is what an on-the-record balancing means, then it provides no greater benefit to an appellate court than just saying "I find that Rule 403 has been satisfied," other than perhaps to reveal that the judge actually knew the wording of Rule 403. Since the Mississippi Supreme Court has indicated at least in McKee the need for an explanation on the record, this Court finds that what that means is for the *775 judge to explain in some summary way the perceived probative value-here it was for identity, and the judge specifically said so-and the nature of the prejudice. Therefore, this issue is without merit.

III. WHETHER THE TRIAL COURT ERRED IN DENYING HODGE'S JURY INSTRUCTIONS 2, 4, and 5.
¶ 40. Hodge asserts that the trial judge erred in denying jury instructions 2, 4, and 5 because they represented the theory of his case and were supported by the factual evidence and the law.
¶ 41. This Court's standard of review in determining whether a trial judge has properly granted or denied a jury instruction is as follows: "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Robinson v. State, 726 So.2d 189, 193(¶ 16) (Miss.Ct.App.1998).
¶ 42. As correctly stated by Hodge, a jury instruction must be supported by the evidence and be a correct statement of the law. See Perry v. State, 637 So.2d 871, 877 (Miss.1994); Dedeaux v. State, 630 So.2d 30, 33 (Miss.1993); Wilson v. State, 592 So.2d 993, 997 (Miss.1991). A trial judge is vested with the discretion to refuse the jury instruction which misstates the law, lacks an evidentiary basis, or that is stated elsewhere in the instructions. Robinson, 726 So.2d at 194(¶ 18).
¶ 43. Jury instruction two reads as follows:
The court further instructs the jury that if you find from the evidence that the sole and only proof of breaking and entering the building of David R. Libby, DDS and William D. Dooley, DDS, with the intent to remove valuables, consisted of circumstantial evidence of a latent footprint allegedly lifted from the commercial establishment d/b/a the Pediatric Dental Group then you must find that the evidence is insufficient to establish guilt that Paul Revere Hodge did enter a certain building owned by David Libby, DDS and William D. Dooley, DDS in Southaven, DeSoto County, Mississippi on November 9, 1998, with the intent to remove valuable property and that Paul Hodge is not guilty of Count 1 of the crime of burglary.
¶ 44. Hodge relies on McLain v. State, 198 Miss. 831, 835-37, 24 So.2d 15, 15-16 (1945), to support the giving of jury instruction number two asserting that while the footprint evidence is evidence of his identity, it is not evidence of guilt of a particular crime. The case of McLain v. State is distinguishable from the case at bar.
¶ 45. In McLain, the Mississippi Supreme Court did not address the issue of jury instructions. Additionally, the Court held that in that particular case, fingerprint evidence was the only evidence presented to establish guilt of grand larceny and was insufficient. Id. In the case at bar, we are not only dealing with the giving of jury instructions, but the evidence regarding the shoe print identification linking Hodge's to the scene of the crimes was coupled with other circumstantial evidence of guilt and identification regarding the two burglaries. Therefore, the granting of jury instruction number two would not only be a misstatement of the facts presented at trial but also a misstatement of the law and was properly denied.
¶ 46. Jury instruction four reads as follows:
The court instructs the jury that if you believe that the Defendant, Paul Revere *776 Hodge did not make the alleged statements testified to by Detective Hammond, Detective Stewart or Detective Oliver, you should disregard it as an admission by Paul Revere Hodge that tends, in connection with other evidence, to prove the defendant's guilt.
or,
if you believe from the evidence that it was made after improper interrogation, under the influence of fear, you may take this into the factors into account in determining what weight or credit if any, you may attach to the statement as being [a] credible and voluntary statement tending to prove his guilt in connection with other evidence.
¶ 47. Jury instruction five reads as follows:
The court instructs the jury that evidence that a witness or witnesses
(a) is prejudiced against the defendant, and/or
(b) has an interest in the outcome of the case, and/or
(c) has engaged in specific instances of misconduct which relate directly to the truth and veracity of the witness
may be used for the limited and sole purpose of ascertaining the credibility of the witness.
¶ 48. The first paragraph of jury instruction number four, as well as jury instruction number five present argument and go to the weight and credibility of the witnesses' testimony. The trial judge had previously granted a jury instruction which informed the jury that they were to determine the weight and credibility of the testimony and evidence. Since jury instructions number four and five were merely cumulative the trial judge was not required to grant the instruction. See Edwards v. State, 737 So.2d 275, 316 (¶ 141) (Miss.1999). Additionally, the record lacks evidence to support that an improper interrogation occurred as suggested in the second paragraph of jury instruction number four. While Hodge's counsel may have tried to evoke such testimony from the officers during cross-examination, this approach was unsuccessful. Hodge presented no witness to prove that anything improper occurred when he made his statement. When the trial judge denied this portion of the jury instruction he stated: "the second paragraph is a decision of law to be made by me, and I've already made the decision that that can come in as to the case law." The jury instructions which were granted by the trial judge when viewed as a whole fairly announced the law. For the above stated reasons, the trial judge was within his discretion when he denied these instructions; therefore, this issue is without merit.

IV. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION WHEN HE DENIED HODGE'S MOTION FOR A NEW TRIAL AND JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 49. Hodge argues that not only was there not sufficient evidence to support the guilty verdict, but that the verdict was against the overwhelming weight of the evidence. Our standard for reviewing challenges to convictions based on sufficiency of the evidence is well established.
¶ 50. A judgment notwithstanding the verdict challenges the sufficiency of the evidence. Sherrod v. State, 755 So.2d 569, 571(¶ 7) (Miss.Ct.App.2000). To test the sufficiency of the evidence,
we must, with respect to each element of the offense, consider all of the evidence-not just the evidence which supports the case for the prosecution-in the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The *777 prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Wetz v. State, 503 So.2d 803, 808 (Miss. 1987) (citations omitted). As pronounced in the above statement of facts the State presented sufficient evidence for a reasonable and fair-minded juror to find Hodge guilty. Therefore, the trial judge was required to leave the determination of guilt or innocence to the jury. The next contention is that the trial judge erred when he denied the motion for a new trial. In Benson v. State, 551 So.2d 188, 193 (Miss. 1989), the Mississippi Supreme Court provided the following explanation of when it would grant a new trial:
This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
A motion for a new trial is within the sound discretion of the trial court. Burge v. State, 472 So.2d 392, 397 (Miss.1985). It must be kept in mind that any discrepancies were properly resolved by the jury as fact finder because questions regarding weight and worth of witness testimony or witness credibility are for the jury to settle. Eakes v. State, 665 So.2d 852, 872 (Miss.1995). This Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Id. Upon reviewing all of the evidence we find that the trial court did not abuse his discretion in denying the motion for new trial. Accordingly, this issue is without merit.
¶ 51. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF COUNT ONE BURGLARY OF A BUILDING AND SENTENCE OF THREE YEARS; COUNT TWO BURGLARY OF A BUILDING AND SENTENCE OF SEEN YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT ONE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, MYERS, CHANDLER and BRANTLEY, JJ., concur.
IRVING, J., dissents with a separate written opinion joined by KING, P.J.
IRVING, J., dissenting:
¶ 52. Paul Revere Hodge was put on trial in DeSoto County, Mississippi, for burglary of a business in Southaven, Mississippi. This burglary occurred in November 1998. The majority concludes that Hodge was not denied a fair trial as a result of the admission of testimony from two Shelby County, Tennessee sheriff's deputies regarding a burglary allegedly committed by Hodge three months earlier in Memphis, Tennessee. The majority approves this testimony as permissible evidence under Rule 404(b) of Mississippi Rules of Evidence. I believe the testimony was not admissible to show either of the *778 exceptions under Rule 404(b), but even if it does qualify as one of the exceptions, its probative value is far outweighed by its prejudicial effect. For this reason, I must respectfully dissent.
¶ 53. The two Shelby County deputies gave extensive and detailed testimony about the burglary that occurred in Memphis. This testimony included what transpired from the moment the burglary alarm was sounded to the moment Hodge was apprehended. The officers testified about the chase, about Hodge's clothing, and about Hodge's tossing a pouch containing burglar's tools as he attempted to scale a private fence.
¶ 54. The State's theory was that the Memphis burglary was admissible to show modus operandi. It is argued that the modus operandi for the two burglaries was the same. In the Memphis burglary, the wires to the telephone and alarm systems were cut, the locks on the doors were twisted off with some kind of instrument, and Hodge had burglar's tools in his possession when he was apprehended. He was wearing a skull cap, dark short pants, boots, and a dark tee shirt. Nothing was taken in this burglary.
¶ 55. In the Mississippi burglary, the wires to the telephone system were cut. The lock had been twisted off with some type of foreign object, maybe pliers; only money was taken. When Hodge was arrested for the Mississippi burglary, his car was towed and inventoried. In the trunk of his car, officers found what they considered to be burglar's tools. A knit cap was found on the hood of Hodge's frost-covered car after it had been towed and Hodge taken into custody.
¶ 56. During the trial, the prosecution picked up the knit cap that was found on Hodge's car, showed it to the Tennessee deputy and asked him, "What's this?" The answer of course was that it was a skull cap. It is obvious that Hodge could not have placed the cap on his car since he was already in custody. However, the purpose of the question and answer was to demonstrate that a nexus existed between the perpetrator of the Tennessee burglary and the perpetrator of the Mississippi burglary.
¶ 57. It is plain to see that neither burglary was a signature burglary. There was nothing unique about either of them. Every burglar possesses some tools of his trade. The entrance to most burglarized buildings is gained by either breaking the lock on the door or breaking a glass window or door. Thus, the only logical purpose for admission of the evidence concerning the Tennessee burglary was to show propensity, that is, that Hodge committed the Tennessee burglary and he must have been the same one who committed the Mississippi burglary. I believe admission of the evidence regarding the Tennessee burglary was improper and highly prejudicial to Hodge. Therefore, I respectfully dissent.
KING, P.J., joins this separate opinion.