947 So.2d 365 (2007)
Willie Jene QUALLS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00525-COA.
Court of Appeals of Mississippi.
January 23, 2007.
*368 James L. Penley, Vicksburg, attorney for appellant.
Office of the Attorney General by Jacob Ray, attorney for appellee.
Before MYERS, P.J., GRIFFIS, and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Willie Qualls was tried and convicted of one count of burglary and one count of attempted grand larceny in the Circuit Court of Claiborne County. He was sentenced to seven years in the custody of the Department of Corrections as a habitual offender. Qualls appeals to this Court. We find no error below and affirm his conviction.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. At about 3:30 a.m. on the morning of October 20, 2003, Nancy Wilson awoke to see her husband's 1993 GMC truck going down the driveway of their home in Port Gibson. She woke her husband, Don, who instructed her to call the Port Gibson police. Don Wilson then ran out into his yard to stop his truck. He saw the truck's brake lights go on and a young, slim African-American male wearing a white tank-top T-shirt jump out of the truck and run away. Three police officers arrived minutes later and began searching the area. Shortly thereafter, one police officer saw two African-American men running between houses a few blocks away. One of these men was wearing a white tank-top T-shirt.
¶ 3. A few blocks from the crime scene, the other two police officers saw a white car with a Warren County license plate and tinted windows partially pulled into the driveway of an elderly couple's home. While looking in the front window of the automobile, one police officer noticed that someone was in the front seat. He knocked on the window, identified himself as a police officer, and asked the person twice to exit the vehicle, without receiving a response. He then broke the driver's side window of the car with his baton and, upon opening the car door, found two men in the car  one lying on the front seat and one lying on the back seat. The men were observed to be breathing heavily and sweating. The man in the back seat  Willie Qualls  was wearing a white tank-top shirt, and resisted the police officer's attempts to remove him from the car.
¶ 4. The two men were taken into custody and returned to the Wilson's house for possible identification. Although Don Wilson could not definitively identify Qualls as the person who jumped from his truck, Qualls's appearance was consistent with the general description of that person: slim, African-American, and wearing a white tank-top T-shirt. At the police station, Freddie Harris, the other man in the parked automobile, told the police that he and Qualls had attempted to steal Don Wilson's truck that evening.
¶ 5. Two different indictments were brought against Qualls. The first indictment charged him and co-defendant Harris with attempted larceny of a vehicle. The second indictment charged Qualls *369 alone with auto burglary and attempted grand larceny, in addition to noting his habitual offender status.[1]
¶ 6. At a hearing on September 27, 2004, Qualls requested and received a new court-appointed attorney, because Qualls claimed his original court-appointed attorney wanted him to plead guilty. Also, Qualls requested his second indictment be dismissed because it was improperly served. The circuit judge informed Qualls that he must file a motion to this effect.
¶ 7. At a hearing on November 8, 2004, Qualls's new court-appointed attorney moved to dismiss the second indictment for lack of proper service. The State noted that Qualls had been presented with the second indictment at the September 27, 2004 hearing. Further, the circuit judge had Qualls again served with the indictment at the hearing. Qualls also moved to suppress evidence based on an allegedly illegal arrest. The judge continued this motion until the date of the trial.
¶ 8. At trial on January 6, 2005, the jury found Qualls guilty of one count of auto burglary and one count of attempted grand larceny. The judge merged these two counts as a matter of law, and Qualls's sentence was based on the auto burglary charge. The defendant's motion to suppress evidence related to an illegal arrest was denied, as were the defendant's motion for a judgment notwithstanding the verdict ("JNOV") and motion for a new trial. Qualls received a seven year prison sentence as a habitual offender. Qualls now appeals to this Court.

ISSUES AND ANALYSIS
I. WHETHER QUALLS'S INDICTMENT WAS DEFECTIVE.
¶ 9. The issue of whether an indictment is fatally defective is a question of law and warrants a broad standard of review by this Court. Nguyen v. State, 761 So.2d 873, 874(¶ 3) (Miss.2000). Since this issue is a question of law, the standard of review is de novo. Peterson v. State, 671 So.2d 647, 652 (Miss.1996) (citations omitted). The purpose of an indictment is "to inform the defendant with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense." Moses v. State, 795 So.2d 569, 571(¶ 13) (Miss.2001). The indictment shall contain "the essential facts constituting the offenses charged and shall fully notify the defendant of the nature and cause of the accusation." URCCC 7.06.
¶ 10. Qualls argues that he was not fully informed of the charges he would face in the Claiborne County Circuit Court because there were two separate indictments, and he claims this fact created difficulties in knowing which charges he was to defend. Yet, both indictments, as admitted in Qualls's brief, "had similar charges and proof." Qualls was specifically informed by both his own defense attorney at that time[2] and an assistant district attorney, at his November 8, 2004 hearing, which indictment the State was planning to pursue. The judge then reiterated to Qualls that "[y]our attorney will advise you." Obviously, Qualls was put on notice that his defense attorney would know *370 which indictment would go forward. Moreover, there were no claims of error below regarding which indictment to defend against. We cannot see how these circumstances would create difficulties in Qualls's defense when his trial attorney had knowledge of the charges pursued by the State and did not complain of the situation at that time.
¶ 11. Qualls also argues that there were several defects with his first indictment. His first indictment charged him with attempted "taking possession of or taking away a motor vehicle" under Mississippi Code Annotated section 97-17-42 (Rev. 2006). Qualls argues the language of the statute precludes this charge against him. He also points out the indictment lacks a date or seal and contains an inaccurate vehicle description.
¶ 12. While this indictment may contain the structural defects of which Qualls complains, and apparently, the first indictment was never formally dismissed by the trial court, these errors cannot be examined by this Court. The State is correct in noting that the validity of the first indictment was not properly preserved for appeal, because the indictment is not contained in the record. Further, Qualls's defense counsel made no motion to supplement the record. Merely including the initial indictment in the "record excerpts" filed with Qualls's brief is insufficient. The Mississippi Supreme Court has held repeatedly that it is the appellant's duty to have the proper record to support his or her assignments of error. Peterson v. State, 518 So.2d 632, 638 (Miss.1987). This Court cannot assign error to actions not made a part of the record. Thus, this issue, as it pertains to the first indictment, is procedurally barred. Furthermore, even if we considered that this first indictment was properly before this Court, it is not the indictment the State proceeded with. Thus, this issue is without merit regarding the first indictment.
¶ 13. Qualls argues that the second indictment, under which he was tried and convicted, should be dismissed because of lack of service, date, seal, and an improper vehicle description. Regarding proper service for the second indictment, Qualls states that, because he was faxed the indictment while incarcerated, he was not properly served. However, the State claims it attempted to serve him the new indictment at the September 27, 2004 hearing, but Qualls refused to accept it. During the November 8, 2004 hearing, Qualls's new lawyer moved to dismiss the second indictment for improper service, even though Qualls was already in possession of a copy of the indictment at that time. At this hearing, the circuit court judge stated he wanted the lack of proper service to be cured, and informed the defendant that "the failure to serve an indictment does not warrant dismissal of the indictment." At this point in the proceeding, Qualls was re-served with the second indictment by the assistant district attorney, in the presence of the trial judge and his defense counsel, so we find there can be no question of personal, proper service.
¶ 14. Further, in Qualls's brief, he argues for the first time that the second indictment is faulty because there is not a date of filing and an official court seal. Upon review of the copy of the indictment in the record, the reverse image of a "filed" stamp with a date was faintly visible in the bottom right corner, as if the original indictment had been stamped on the back of the paper. To further investigate, we requested a certified copy of the second indictment from the circuit court clerk, which did in fact show the document had the date of filing of August 18, 2004, and court clerk stamp on the reverse side of the original document. Additionally, *371 while the date of filing is required, there is no rule stating an indictment must have a court seal to be valid. See URCCC 7.06; Miss.Code Ann. § 99-7-9 (Rev.2000). We find that the second indictment was properly filed with the circuit clerk, and had this argument been brought before the trial court, the judge in possession of the original record could easily have rejected it. We do so now. As for the inaccurate vehicle description, the second indictment clearly lists the vehicle's make, model, VIN number and owner. This is sufficient. Consequently, the issue regarding Qualls's indictments is without merit.
II. WHETHER THERE WAS PROBABLE CAUSE TO ARREST QUALLS.
¶ 15. Qualls argues that the police officers had mere suspicion regarding the white automobile parked in the driveway, and that this was insufficient probable cause to arrest or search the occupants of the vehicle. Qualls also notes the officers did not have a warrant to break the white vehicle's window. Further, he argues that the attempted crime that morning may not have even been a felony, but could have been a lesser offense like trespass or joy riding, since the truck never left the Wilson's driveway.
¶ 16. Police officers have the legal authority to detain an individual for mere investigatory purposes. Haddox v. State, 636 So.2d 1229, 1234 (Miss.1994). "Given reasonable circumstances, an officer may stop and detain an individual to resolve an ambiguous situation," even when there is not "sufficient knowledge to justify an arrest." Shannon v. State, 739 So.2d 468, 471(¶ 13) (Miss.Ct.App.1999) (citing Estes v. State, 533 So.2d 437, 441 (Miss.1988)). Stopping a suspicious individual to determine his identity "may be most reasonable in light of the facts known to the officer at the time." Singletary v. State, 318 So.2d 873, 877 (Miss.1975) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Additionally, a police officer may make an investigative stop "when he has a reasonable suspicion that the accused is involved in a felony" or other criminal activity. Hodge v. State, 801 So.2d 762, 769(¶ 20) (Miss.Ct. App.2001) (citing Floyd v. State, 500 So.2d 989, 992 (Miss.1986)). Further, "[a] collection of actions which, individually, are subject to innocent explanation may be sufficient to create reasonable suspicion under the totality of the circumstances." Anderson v. State, 864 So.2d 948, 951(¶ 13) (Miss.Ct.App.2003) (citing United States v. Arvizu, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). Yet, "mere hunches" or "looking suspicious" is insufficient to establish reasonable suspicion for an investigatory stop. Id. (citations omitted).
¶ 17. An arrest within the meaning of criminal law means the "taking into custody of another person by an officer . . . for the purpose of holding him to answer an alleged or suspected crime." Smith v. State, 229 So.2d 551, 556 (Miss. 1969) (citations omitted). To be sure, an arrest without a warrant is valid if the arresting officer has "probable cause to believe a felony has been committed, and probable cause to believe the suspect to be arrested committed the felony." Abram v. State, 606 So.2d 1015, 1025-26 (Miss.1992). Further, an officer may arrest a person without a warrant "for an indictable offense committed, or a breach of the peace threatened or attempted" in the officer's presence, or for a felony not committed in the officer's presence, where the officer has "reasonable ground to suspect and believe the person proposed to be arrested to have committed it. . . ." Miss.Code Ann. § 99-3-7(1) (Supp.2005). "Probable *372 cause" has been defined as "less than the evidence which would justify condemnation, but more than bare suspicion." Hester v. State, 463 So.2d 1087, 1090 (Miss. 1985) (internal citations omitted). To determine if an officer had probable cause to arrest an individual, the court must look at the facts and the totality of the circumstances within the knowledge of the officer, not only at that time, but in the preceding circumstances before the arrest, and ask if "that information was reasonably trustworthy and sufficient to warrant a reasonably prudent person to believe that a crime had been committed." Hodge v. State, 801 So.2d 762, 770(¶ 23) (Miss.Ct. App.2001).
¶ 18. In the instant case, during the trial, a hearing occurred on the defendant's motion to suppress the State's evidence regarding the probable cause grounds for arrest. The court denied this motion. The standard of review for a trial judge's ruling on a motion to suppress evidence is well established. This Court must decide whether there was substantial, credible evidence to support the trial judge's ruling. Culp v. State, 933 So.2d 264, 274(¶ 26) (Miss.2005). This ruling must not be disturbed by our Court unless such substantial, credible evidence is absent. Ray v. State, 503 So.2d 222, 223-24 (Miss.1986). Further, admission of evidence is within the discretion of the trial court, and can only be reversed upon abuse of its discretion. Crawford v. State, 754 So.2d 1211, 1215(¶ 7) (Miss.2000).
¶ 19. At the suppression hearing, and indeed in Qualls's brief to this Court, it was not specified by defense counsel what evidence he was trying to suppress relating to Qualls's arrest. We assume it was the identifying evidence gathered, such as the fact Qualls was sweating, breathing hard, and wearing a white T-shirt. The arresting officer testified at length to the events that transpired before the arrest and the circumstances surrounding the arrest. From this detailed factual testimony, the judge ruled that, at the point the police officer approached the parked vehicle, he "did have probable cause to stop the suspects and to question them." The trial judge overruled Qualls's objection, and the evidence of the circumstances surrounding the arrest was presented to the jury.
¶ 20. During the suppression hearing, the arresting officer testified that he was aware that there had been an attempted vehicle burglary nearby, and that the perpetrator had run away. He also knew two suspects, one wearing a white T-shirt, had been seen running between houses in the area. He then saw a suspicious vehicle pulled half-way off the street into an elderly couple's driveway, with a Warren County tag. Initially, he saw one individual in the vehicle.
¶ 21. Based on the circumstances, the officer had reasonable suspicion to knock on the vehicle's window. When the individual seen inside the car did not respond to the officer's two requests to exit the vehicle, the officer had probable cause to break the car window and detain the individual, and the other occupant, for additional questioning, and at the very least, charge both individuals with the misdemeanor of failure to comply with the lawful commands of a police officer. See Miss. Code Ann. § 97-35-7 (Rev.2006). The fact that the officer only saw one individual in the vehicle initially, when two men were seen running in the neighborhood, does not lessen the officer's reasonable suspicion. The fact that Qualls physically resisted the officer's lawful requests, after reasonable suspicion was established, furthers the establishment of probable cause to arrest him. See Miss.Code Ann. § 97-35-7 (Rev.2006) (failure to comply with *373 requests/commands of police officer is misdemeanor); Miss.Code Ann. § 97-9-73 (Rev.2006) (resisting or obstructing arrest is misdemeanor).
¶ 22. Therefore we find that, in analyzing the totality of these circumstances, the trial court judge had substantial, credible evidence to deny Qualls's motion to suppress the evidence surrounding his arrest. Furthermore, we find that there was reasonable suspicion to investigate the suspicious white vehicle, and then probable cause to detain its occupants for further questioning in light of their failure to respond and resisting arrest. Accordingly, the trial judge did not abuse his discretion and properly found there was probable cause to arrest Willie Qualls.
III. WHETHER THE VERDICT WAS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
¶ 23. Qualls asserts that the jury verdict was against the weight and sufficiency of the evidence presented to the jury. He states that since there was no direct evidence connecting him to the attempted crime, the jury "was forced to draw upon inferences and suspicious circumstances to find him guilty." Qualls states he was not a resident of the small town of Port Gibson and was thus the "perfect foil" for a crime against a local citizen. Further, Qualls stated that his testimony during trial about copious drinking and marijuana usage the night of the crime could have prejudiced the jury to find him "more guilty than not."
¶ 24. Although not discussed in his brief, challenges to the weight and sufficiency of the evidence relate to Qualls's motion for a new trial and motion for JNOV, both of which were denied. It is well established that a motion for a new trial challenges the weight of the evidence. Sheffield v. State, 749 So.2d 123, 127(¶ 16) (Miss.1999). This Court must "accept as true the evidence which supports the verdict." Todd v. State, 806 So.2d 1086, 1090(¶ 11) (Miss.2001). "A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction `unconscionable injustice.'" Id.
¶ 25. Alternatively, a motion for JNOV challenges the sufficiency of the evidence presented to the jury, not its weight. McClain v. State, 625 So.2d 774, 778 (Miss.1993). To consider this challenge, the Court must ask "whether the evidence shows `beyond a reasonable doubt that [the] accused committed the act charged, and . . . that every element of the offense existed.'" Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss. 1968)). Our Court can reverse only when "the facts and inferences considered in a challenge to the sufficiency of the evidence `point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.'" Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). The sufficiency of the evidence is reviewed by our Court in the light most favorable to the State. Bush v. State, 895 So.2d 836, 843(¶ 17) (Miss.2005).
¶ 26. In the case sub judice, the weight and sufficiency of the evidence presented by the State support the conviction of Qualls. Don Wilson was able to identify the general appearance of the suspect as he ran from the truck. Two persons, one fitting the description of the suspect, were seen running in the area near the crime scene. In this same time frame a car with a Warren County tag was blocking an elderly couple's driveway. The occupants *374 refused to respond to police orders. Once out of the car, Qualls fit the description of the burglary suspect. These men were sweating in the car as if they had been running. This Court must weigh the evidence in a light favorable to the State. Thus, we are not persuaded that the jury verdict was contrary to the overwhelming weight of the evidence. The record indicated that a reasonable, fair-minded jury could find beyond a reasonable doubt Qualls's guilt. The allegedly prejudicial effect on the jury of Qualls's voluntary testimony about his partying the night in question does not relate in any way to the weight or sufficiency of the evidence. We find the jury was presented with substantial evidence to support its conviction of Qualls for auto burglary and attempted grand larceny beyond a reasonable doubt. This issue is without merit.
IV. WHETHER THE STATE FAILED TO PROVE ALL THE ELEMENTS OF THE CRIME BEYOND A REASONABLE DOUBT.
¶ 27. Qualls argues that the State failed to prove all of the elements of the crimes charged. Ultimately, Qualls was sentenced for auto burglary, after the judge merged the attempted grand larceny and auto burglary charges as a matter of law. Qualls argues that even though there is ample proof that someone was in the Wilson's car and broke the steering column, it was "only speculation" that the intent of that person was to steal the truck. He maintains that the State failed to show the intent element for this crime. He suggests the perpetrator could have been merely trespassing, and there was no jury instruction to this effect. Further, he argues that there is no evidence linking Qualls to the breaking and entering of the truck, and no evidence was offered to prove the Wilsons owned the truck.
¶ 28. Although the State's case was based entirely on circumstantial evidence, direct evidence is not needed to sustain a conviction as long as there is sufficient circumstantial evidence "to prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." Fleming v. State, 604 So.2d 280, 288 (Miss. 1992) (citations omitted). This does not mean that the circumstantial evidence "exclude every possible doubt, but only every reasonable doubt, or reasonable hypothesis of innocence." Tolbert v. State, 407 So.2d 815, 820 (Miss.1981). However, the burden of proof is higher for circumstantial evidence than cases based on direct evidence. Murphy v. State, 566 So.2d 1201, 1204 (Miss.1990).
¶ 29. The elements of auto burglary are unlawful breaking and entering of an automobile with the intent to steal, or with the intent to commit any felony. Miss.Code Ann. § 97-17-33 (Rev.2006). A jury could reasonably find that an individual, driving another person's truck down his driveway, in the early morning hours in a vehicle with a broken steering column, and who runs away when confronted, has the intent to steal that vehicle. The evidence showed that an individual did break and enter Don Wilson's car, with the necessary intent to steal it. The evidence linking Qualls to the crime, although circumstantial, was sufficient for the jury to find Qualls guilty beyond a reasonable doubt to the exclusion of any hypothesis consistent with innocence. Qualls was found in a vehicle, hiding, shortly after the crime, near the scene of the crime, with no other reasonable explanation for being there. He and his accomplice were lying out of sight, breathing heavily and sweating, after a police officer saw two men running in the area, one of whom fit the description of Qualls, *375 and also resembled the suspect who ran from the victim's truck. The State proved the elements of auto burglary to the jury beyond a reasonable doubt. Accordingly, this issue has no merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY OF CONVICTION OF AUTOMOBILE BURGLARY AND ATTEMPTED GRAND LARCENY AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. CARLTON, J. NOT PARTICIPATING.
NOTES
[1] In 1991, Qualls pled guilty to grand larceny and burglary and received a four year prison sentence. In 1995, Qualls pled guilty to aggravated assault and carrying a concealed weapon while a felon, and received a fifteen year prison sentence.
[2] Qualls has had three attorneys involved in this proceeding. His second court-appointed attorney handled his trial. A different attorney is representing Qualls on appeal.